Frank A. ROBERTO, Petitioner-Respondent,

v.

Judith L. BROWN, Appellant.

Supreme Court

*No. 81–410.  Argued March 30, 1982.—Decided April 27, 1982.*

(Also reported in 318 N.W.2d 358.)

For the appellant there were briefs by *Linda S. Balisle* and *Koritzinsky, Neider, Langer & Roberson* of Madison, and oral argument by *Ms. Balisle*.

For the respondent there was a brief by *Ronald B. Paskin* and *Paskin & Kepler* of Madison, and oral argument by *Ronald B. Paskin*.

Amicus Curiae brief was filed by *Marygold Shire Melli, Phyllis N. Segal, Judith I. Avner* and *Anne E. Simon,* all of Madison, for NOW Legal Defense and Education Fund.

BEILFUSS, C.J.   This is a divorce action in which this court assumed jurisdiction upon certification from the court of appeals, pursuant to sec. 809.61, Stats. The appellant, Judith Brown, appealed from the trial court's division of property and denial of maintenance.

The principal issue is how to fairly compensate a person who has financially or otherwise aided or assisted his or her spouse while such spouse pursues and obtains additional education or training.

The parties were married in June of 1971. At the time of the marriage the husband, Frank A. Roberto, had a Bachelor's Degree in Biology. The wife, Judith L. Brown, received a Master's Degree in Interior Design two months after they were married. After she received

her Master's Degree, the couple moved from Madison, Wisconsin to Milwaukee, Wisconsin, where he worked as a biochemical researcher and she worked as an interior designer. In 1972 they moved back to Madison where Frank entered medical school. During the first one and one-half years of his medical school, Judith worked in Madison in her chosen field of residential interior design. However, she felt she was not earning enough money at this job to meet the couple's financial needs and therefore obtained a clerical position. She worked at clerical positions for the next two years and two months.

After Frank finished medical school in 1976, the couple moved to New Haven, Connecticut, where he completed a one-year internship. Judith worked for several months, but testified that she was unable to find satisfactory work in her field. While in New Haven, Frank decided to return to Madison for additional education so that he could specialize in child psychiatry. Frank testified that the decision to return to Madison was mutual, but Judith testified that she objected to the move because she felt it would restrict her career opportunities. She stated that she agreed to the move for Frank's benefit.

In July of 1977, the couple returned to Madison. They purchased a house with an extra bedroom with the expectation that it could be used as a part-time office for her. She took an interior design position and he worked as a resident at the University of Wisconsin Hospitals. During 1978, Frank also worked part time at the Mendota Mental Health Institute. Judith switched jobs in 1978, changing from a position in her preferred field of residential interior design to a higher paying position in commercial design.

Frank moved out of the couple's home in January of 1979. He has not contributed to the mortgage, tax

or insurance payments since that time. He petitioned for divorce and the trial occurred after the parties had been separated for approximately one and one-half years. At the time of trial both parties were thirty-three years old and in good health. There were no children. Judith was still working at a commercial design job, earning $1,698 per month. Frank was completing his medical residency and earning $1,467 per month.

At trial Judith requested both property division and maintenance payments. The trial court denied her request for maintenance because she was obviously capable of self-support after having supported both her husband and herself while he was in medical school. As stated above, she was actually earning more than he was at the time of trial, although his income could be expected to rise sharply upon completion of his residency.

Judith argued at trial that she and Frank had agreed that she would defer her career goals and support him while he received his medical training. He would then, in turn, support her while she set up her own business as an independent residential designer. Judith testified that she would need two more years of on-the-job training to reach her career goal of becoming an independent residential designer. During these two years she estimated that she would have to take a substantial pay cut. She would then have three lean years while she built up her clientele. Frank disagreed that a specific agreement existed. He felt that any support he would furnish her was premised upon their being married. The trial court held that, "it is not possible to make a finding of mutual agreement between these parties. Nonetheless, cognizance must be taken of the fact that Dr. Roberto had a general idea of Ms. Brown's expectations and that he permitted her career sacrifices and substantial contribution to his professional achievement."

The trial court did find that her contributions to the marriage were "significantly greater" than his. She

provided virtually the sole support of the family while he was in medical school. Over the entire marriage, however, the parties' financial contributions were nearly equal. Judith's total earnings were $46,941, while Frank's contributions, including loans, were $48,766. She deferred her career plans for his benefit, working for two years and two months at a job that was personally distasteful to her. She testified that the various changes of residence made by the couple were for Frank's benefit and adversely affected her career. She had wanted to move to a large city to further her career. She also performed the far greater percentage of the household chores.

The trial court concluded that Judith should receive the larger share of the marital property as compensation for her greater contributions. The parties divided their personal property, so the only available asset for division was the equity in their house. This was estimated to be approximately $14,000. The court awarded her the proceeds from the sale of the house, but required her to execute a note to him for 30 percent of the proceeds to compensate him for his contributions to the marriage. She was to have exclusive use of the proceeds for three years. After this time she was to repay the note, representing 30 percent of the proceeds, plus 10 percent interest. She was to have three years to repay the amount, so that after six years her net award would have been 70 percent of the proceeds, while Frank would receive 30 percent plus interest.

Judith appealed the trial court's award to the court of appeals. The court of appeals certified the case to this court for review and we accepted the certification.

The issues in this case are similar to those in *Lundberg v. Lundberg*, 107 Wis.2d 1, 318 N.W.2d 918 (1982), which we also decide today. Both cases involve a divorce which takes place after one spouse has worked to support the other spouse while completing an education.

At the divorce trial, the working spouse requested compensation for her contributions to the marriage. This case is controlled by our rationale in *Lundberg*. In that case we held that the working spouse was entitled to be fairly compensated for her costs of support and for her foregone opportunities in her own career. We held that the Divorce Reform Act, ch. 105, Laws of 1977, provides a flexible means by which a trial court can award just compensation to a spouse by using either maintenance or property division, or both.

The trial court in the present case relied upon the court of appeals' decision in *DeWitt v. DeWitt*, 98 Wis. 2d 44, 296 N.W.2d 761 (1980). However, we held in *Lundberg* that *DeWitt*, which involved the statutes as they existed prior to the 1977 Divorce Reform Act, was not controlling for cases arising after the Act. Therefore, in this action we reverse and remand to the trial court for a consideration of the facts of this case in light of our decision in *Lundberg*.

On remand the trial court should consider the possibility of a maintenance award in addition to the property settlement. As we discussed in *Lundberg*, maintenance payments are not to be denied merely because a spouse is capable of self-support. Maintenance payments are governed by the factors listed in sec. 767.26, Stats. 1979. Numerous factors are listed for a trial court's consideration in this statute. The purpose of such awards is always to reach a fair and equitable result. In this case it seems only fair that Judith receive an award that will aid her to reach her career goal of becoming an independent residential designer. She aided Frank substantially in the attainment of his career goals and it is only fair that he aid her in return.[1]

---

[1] The trial court found that the parties did not have a mutual agreement whereby Frank would support her while she set up her own business. The court did find that Frank was aware of at

In essence, Judith was awarded 70 percent of the proceeds from the sale of the house. This seems insufficient compensation for her significantly greater contributions to the marriage. Sec. 767.255, Stats., requires a trial court to presume that the marital property is to be equally divided. Theoretically, therefore, Judith should have received 50 percent of the proceeds even if she had not supported Frank while he was in school and deferred her own career plans. A mere 20 percent extra from the proceeds seems insufficient compensation in this case.

The trial court should consider all of the credible evidence and provide for a fair and equitable financial division of estate and award of maintenance, whether it be a division of estate or award of maintenance, or both.

*By the Court.*—Judgment reversed and remanded to the circuit court.

CECI, J., took no part.

least part of what Judith expected. These findings by the trial court are not against the great weight and clear preponderance of the evidence. However, the evidence regarding Frank's awareness of her expectations is certainly relevant to the issue of compensating Judith. Furthermore, sec. 767.26(5), Stats., requires the trial court to take into account the ". . . time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment."