IN RE the MARRIAGE OF Judy Mae LUNDBERG and
David A. Lundberg:

Judy Mae LUNDBERG, Petitioner-Respondent-Petitioner,

v.

David A. Lundberg:

Supreme Court

*No. 80–1743. Argued March 30, 1982.—Decided April 27, 1982.*

(Also reported in 318 N.W.2d 918.)

For the respondent-petitioner there was a brief by *G. Jeffrey George* and *Steele Klos & Flynn—Chartered,* of La Crosse, and oral argument by *Mr. George.*

For the appellant there was a brief by *David E. Joanis* and *Joanis, Davis, Ablan & Joanis,* of La Crosse, and oral argument by *David E. Joanis.*

BEILFUSS, C.J.   This is a review of a decision of the court of appeals which reversed the trial court's award of compensation in a divorce case to a woman who had supported her husband while he obtained a medical education.

The petitioner, Judy Mae Lundberg, and the respondent, David A. Lundberg, were married on December 19, 1970. Both parties were in college at the time of the marriage. Judy was in graduate school studying for a Master's Degree in English. David was in his last year of college, pursuing a Bachelor's Degree in Biology. Judy received her Master's Degree in June of 1972. She took a position as a high school teacher in Rochester, Minnesota, beginning in September, 1972, and was employed there through June of 1976. After graduation from college, David attended graduate school in biology for one year. In the fall of 1972 he entered the Mayo Medical School in Rochester. David received his M.D. degree in June of 1976.

He was not employed while in medical school. The trial court found that his total financial contribution during medical school was $6,605. This consisted of various benefits and loans. His tuition and lab fees for medical school totaled $6,955. Judy's earnings from her teaching position amounted to $45,981 during the four years he spent in medical school. The parties' financial contributions prior to medical school were roughly equal. David earned $7,685 and Judy earned $6,200.

After David graduated from medical school they moved to Holmen, Wisconsin. David began a three-year medical residency in La Crosse, Wisconsin. During this period he earned a total of $39,888. Judy taught school in Holmen, earning $35,948 from 1976 through 1979. In July of 1979 David completed his residency. He was certified as a family practitioner and joined a partnership with another doctor in Zumbrota, Minnesota. His income at the time of trial was $960 every two weeks. He estimated that his annual income at the end of his first year of practice would be between $35,000 and $40,000 for a four-day work week. Judy continued to teach in Holmen, earning $13,360 per year.

On August 10, 1978, Judy filed a petition for divorce. The trial occurred on November 27, 1979, and a judgment of divorce was entered on August 13, 1980. The trial court, Circuit Judge Eugene A. Toepel, awarded to each party the assets in their possession. The court found the assets in David's possession to have a value of $13,585, while those awarded to Judy were valued at $7,032, plus her interest in two pension funds worth $3,464.87. Added together, her total assets were valued at $10,496.87. Judy requested compensation for her support of David while he was in medical school. Over the entire length of the marriage Judy earned $88,128.50, while David earned $54,178.32. Most importantly, during the crucial years while David was in medical school,

Judy supported both of them on her earnings. In addition, the trial court found that Judy rendered substantial emotional support to David and performed virtually all the household duties during the marriage. She also maintained a large garden, and canned the produce, baked on weekends, and cared for a flock of chickens, all of which helped reduce the family's expenses.

At trial Judy called an economist to establish the value of her investment in David's medical degree. The economist established two methods of valuing her investment. The first method compared the average earnings of family practitioners with the average earnings of white males with five or more years of college education. The difference between these two figures was $24,976 per year. Over an assumed 25-year working period this difference amounted to $624,400. This amount was then reduced to present value, using both a 10 percent and a 12 percent discount rate. David's foregone earnings that he could have made if he had worked instead of going to medical school were deducted from each figure, along with the additional taxes he would owe as a result of his increased income. From these rather complex calculations, the economist found the net present value of David's additional income that he will earn as a result of his degree to be between $110,837 and $132,402, depending on which discount rate is used. The trial court found that these present value figures were established by credible economic evidence.

The second method used by the economist to value Judy's investment in her husband's education was based on the amounts she spent to support him. The economist calculated that she contributed $25,510 to David's support while he was in medical school. If she had invested this money at a five percent rate of return, by 1980 she would have realized $33,077.

In demanding compensation for her support of her husband, Judy did not use any of the economist's figures. Instead, she came up with an estimate that the value of her support was $25,000, and requested that amount. David estimated that her contributions had been worth $20,207.39, and was willing to pay her that amount.

The trial court awarded her $25,000. The court seemed to phrase this award in terms of maintenance. The court wrote that, "there is ample equitable justification for the $25,000.00 award as maintenance." "But" the court went on to say, "whether it is called maintenance or property division, the amount of this award is fair. In fact, much more could be justified. Any less would be inequitable to Judy Lundberg." The court made the $25,000 award payable at the rate of $300 per month from August 15, 1980 to August 14, 1981; $500 per month from August 15, 1981 through August 14, 1982; and the balance of the $25,000, plus interest at the rate of eight percent, due on or before August 15, 1982.

The court of appeals reversed on the basis of its holding in *DeWitt v. DeWitt*, 98 Wis. 2d 44, 296 N.W.2d 761, (Ct. App. 1980). Because it found no authority in Wisconsin for "gross alimony" awards, the court of appeals held that the award in this case must be treated as part of the property division. In *DeWitt*, the court held that an educational degree was not an asset that can be valued, included as marital property, and divided between the parties. The court of appeals did note that it was proper for the trial court to take Judy's contribution to David's education into account when dividing the marital property. However it concluded that it was not proper to award her a return on her investment in her husband's degree. The $25,000 award was also found to be improper because it exceeded the total value of the parties' assets. Such a property division, which can only be satisfied by dividing post-divorce earnings, was not approved in *DeWitt*.

Judy Lundberg petitioned for review of the court of appeal's decision and this court granted the petition.

The problem posed by this case and the similar case of *Roberto v. Brown*, 107 Wis. 2d 17, 318 N.W.2d 358 (1982), which we also decide today, is how to fairly compensate a person who has supported his or her spouse while the spouse was in school, when the marriage breaks up before the family is able to realize the benefits from the spouse's education. The situation posed by this case seems to be a not uncommon one. The parties here have not accumulated significant marital property. They own no real estate. The efforts of both spouses have been directed towards earning David's medical degree. Such a situation was foreseen by the concurrence in *DeWitt, supra,* 98 Wis. 2d at 63. Judge Dykman wrote that in such a case it would be difficult under the traditional rules to adequately compensate the working spouse. There would not be enough assets to award the spouse as compensation, and maintenance payments would probably not be available because the spouse was self-supporting. *Id.* at 65. Given these constraints, the concurrence in *DeWitt* argued that the husband's educational degree should be considered as a marital asset that could be valued and divided between the parties.

The majority in *DeWitt* rejected the idea of valuing a professional education. The court wrote that it would be too difficult to value something as intangible as an education or degree. It also disapproved of the approach, taken by some jurisdictions, which allows the working spouse to recover the costs of supporting the person while in school. According to the majority, such an approach "fails to consider the scholastic efforts and acumen of the degree holder, which may well have a bearing on the income-yielding potential of the education. It treats the parties as though they were strictly business partners, one of whom has made a calculated investment in

the commodity of the other's professional training, expecting a dollar for dollar return. We do not think that most marital planning is so coldly undertaken." *DeWitt, supra,* at 57.

No clear trend is evident from the cases in other jurisdictions which have considered this problem. The court of appeals in *DeWitt* relied on *In re Marriage of Graham,* 194 Colo. 429, 574 P.2d 75 (1978), in which the Colorado Supreme Court held that a Master's Degree in Business Administration, obtained by a husband while his wife provided approximately 70 percent of the family's income, was not property subject to division upon divorce. The Colorado court stated at page 432:

"An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of 'property.' It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term."

*See also: In re Marriage of Aufmuth,* 89 Cal. App. 3d 446, 152 Cal. Rptr. 668 (1979); *Stern v. Stern,* 66 N.J. 340, 331 A. (2d) 257 (1975).

A number of recent cases have held that a spouse is entitled to some type of compensation for his or her support of the family while the other spouse earned a degree. In *In re Marriage of Horstmann,* 263 N.W.2d 885 (Iowa, 1978), the Iowa Supreme Court agreed with the pronouncement of the Colorado Supreme Court in *Graham* that a professional degree is not an asset to be

considered in the distribution of the marital property. However, the court held that the increased earning potential made possible by the degree was an asset for distribution by the court. As the court wrote at page 891:

"We hold a trial court in a dissolution case where proper evidence is presented may consider the future earning capacities of both parties and in determining those capacities it may consider the education, skill or talent of both parties. This statement of principle, articulated in *Schantz,* applies to the court's determination of an equitable distribution of assets and property and to a determination of whether alimony should be awarded and, if so, to the amount to be awarded. *In re Marriage of Beeh,* 214 N.W.2d 170, 174 (Iowa 1974)."

The court went on to state that it was proper to value the education by looking to its cost.

Other courts which have awarded the spouse compensation have tended to limit the compensation to amounts spent by the working spouse for the support and educational expenses of the spouse while in school. *See e.g., Inman v. Inman,* 578 S.W.2d 266 (Ky. App. 1979) ; *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755 (Minn. 1981). However, two recent cases may suggest that an individual could be entitled to a portion of the present value of the spouse's future earnings. In *In re Sullivan,* 8 FLR 2165 (1982), the California Court of Appeals, Fourth District, stated that ". . . 'as a minimum the community should be reimbursed for the amount of any community funds that were expended to acquire the education, degree and license.' . . ." The Massachusetts Probate and Family Court held in *Reen v. Reen,* 8 FLR 1053 (1982), that a wife who helped support her husband while he became a dentist is entitled to part of the $800,000 value of the degree.

We believe that our Divorce Reform Act, ch. 105, Laws of 1977, provides a flexible way for trial courts to compensate a spouse in cases of this kind. The *DeWitt Case,*

on which the court of appeals relied in reversing the trial court, arose under ch. 247, Stats. 1975. However, the legislature subsequently made numerous changes in the divorce and separation statutes. This case is controlled by the amended statutes and we hold that the trial court properly applied them in awarding compensation to Judy Lundberg.

In amending these statutes, the legislature made clear its intent that ". . . a spouse who has been handicapped socially and economically by his or her contributions to a marriage shall be compensated for such contributions at the termination of the marriage. . . ." Ch. 105, sec. 1(2), Laws of 1977. Compensation for a person who supports his or her spouse while the spouse is in school can be achieved through both property division and maintenance payments. Sec. 247.255, Stats. 1977, requires the trial court to presume that the property is to be equally divided.[1] However the statute allows a court

---

[1] Sec. 247.255, Stats., reads:

"247.255  **Property division.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 247.02(1)(h), the court shall divide the property of the parties and divest and transfer the title of any such property accordingly. A certified copy of the portion of the judgment which affects title to real estate shall be recorded in the office of the register of deeds of the county in which the lands so affected are situated. The court may protect and promote the best interests of the children by setting aside a portion of the property of the parties in a separate fund or trust for the support, maintenance, education and general welfare of any minor children of the parties. Any property inherited by either party prior to or during the course of the marriage shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship on the other party or on the children of the marriage, and in that event the court may divest the party of such property in a fair and equitable manner. The court shall presume that all other property except inherited property is to be

to award more than one-half of the property to one of the parties after considering a number of factors. Specifically listed among these factors is sec. 247.255(5): "The contribution by one party to the education, training or increased earning power of the other." Also clearly relevant to this case are sub. (3), dealing with

divided equally between the parties but may alter this distribution without regard to marital misconduct after considering:

"(1) The length of the marriage.

"(2) The property brought to the marriage by each party.

"(3) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

"(4) The age and physical and emotional health of the parties.

"(5) The contribution by one party to the education, training or increased earning power of the other.

"(6) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

"(7) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having custody of any children.

"(8) The amount and duration of an order under s. 247.26 granting maintenance payments to either party, any order for periodic family support payments under s. 247.261 and whether the property division is in lieu of such payments.

"(9) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

"(10) The tax consequences to each party.

"(11) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

"(12) Such other factors as the court may in each individual case determine to be relevant."

the parties' contributions to the marriage, and sub. (6), the earning capacity of each party. Thus, in a case where the parties have accumulated substantial marital property, a spouse could be compensated by increasing his or her share of the property.

In the present case the parties have not acquired a great deal of property. The trial court allowed each party to keep the property in his or her possession. According to the trial court's valuation, the property awarded to David was actually about $3,000 more valuable than that given to Judy. In this situation an equitable way to ensure that Judy is recompensed is by awarding her maintenance payments. We agree with the trial court that, under sec. 247.26, Stats. 1977, maintenance payments are no longer limited to situations where the spouse is incapable of self-support. Instead, we view maintenance as a flexible tool available to the trial court to ensure a fair and equitable determination in each individual case.

Sec. 247.26, Stats., is similar to sec. 247.255 in setting forth a number of factors for the trial court to consider in making its decision.[2] The nature of these factors

---

[2] Sec. 247.26, Stats. 1977, provides:

"247.26 **Maintenance payments.** (1) Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 247.02(1)(g) · or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(a) The length of the marriage.

"(b) The age and physical and emotional health of the parties.

"(c) The distribution of property made under s. 247.255.

"(d) The educational level of each party at the time of marriage and at the time the action is commenced.

"(e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

persuades us that maintenance is no longer to be based solely on need. Indeed, the feasibility that the party seeking maintenance can become self-supporting is only one of the factors to be considered in deciding whether to award maintenance. Under the 1977 statutes, sec. 247.26, dealing with maintenance, did not have a provision comparable to sec. 247.255(5) which directed the courts in making the property division to consider the contributions by one party to the education of the other.[3] However, the lack of such a provision did not prevent the trial court from considering Judy's contributions to David's education in deciding to award maintenance. This factor could properly have been considered under sec. 247.26(1)(i): "Such other factors as the court may in each individual case determine to be relevant." The trial court also relied on the following statute in making its award: sec. 247.26(1)(c), the distribution of property made; (d), the educational level of each party at the time of the marriage and at the time the action is commenced; and (f), the feasibility that the parties seeking maintenance can become self-supporting

"(f) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

"(g) The tax consequences to each party.

"(h) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

"(i) Such other factors as the court may in each individual case determine to be relevant."

[3] The legislature subsequently amended the maintenance statute to include sub. (9), "The contribution by one party to the education, training or increased earning power of the other." Ch. 247 was also renumbered as ch. 767 under the 1979 statutes.

at a standard of living reasonably comparable to that enjoyed during the marriage.

We hold that the trial court properly considered these factors and rendered a judgment which was fair and equitable under the circumstances. The amount of the award was certainly not unreasonable. Judy contributed over $30,000 more to the marriage than David did. She also performed the majority of the household chores. A significant part of Judy's earnings went to support David so that he could devote all his energies to earning his degree. Both parties sacrificed so that David could become a doctor.

In a sense, his medical degree is the most significant asset of the marriage. It is only fair that Judy be compensated for her costs and foregone opportunities resulting from her support of David while he was in school. Given the facts of this case, the trial court was well within its discretion in awarding $25,000 to Judy. David valued her contributions at $20,207.39, and was willing to pay that amount. Judy testified that $25,000 was fair compensation, while the economist testified that her investment in David's education was worth $33,077. In this proceeding Judy asks for $25,000. An award of $25,000 was certainly justifiable.

We also hold that it was proper for the trial court to spread the maintenance payments out over a fixed period. When maintenance is employed for compensation purposes, as opposed to purposes of support, it seems preferable to arrange a series of payments over a fixed period. This allows both parties to plan their financial matters and allows a spouse to be reimbursed for his or her contributions within a reasonable period of time. This is important because the legislature has retained the rule in sec. 247.32(3), Stats. 1977, that

maintenance can be terminated upon the spouse's remarriage. The size of the payments and length of time over which they can be made should be set according to the ability of the spouse to pay. The trial court should retain jurisdiction to alter the amount and timing of the payments if the financial circumstances of the payor spouse change drastically.

The legislature has created a progressive and flexible method of trial courts to fairly compensate a spouse who has been "handicapped socially or economically" by his or her contribution to a marriage. A trial court should examine all the relevant circumstances of a particular case and may employ maintenance, property division or a combination of the two in order to fairly compensate a spouse. The goal in such cases is always to achieve a fundamentally fair and equitable result.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for entry of judgment not inconsistent with this opinion.

CECI, J., took no part.

WILLIAM G. CALLOW, J. *(concurring).* I agree with the majority's determination that a spouse is entitled to receive compensation for being the breadwinner and for those lost opportunities which result from sacrifices made while supporting the spouse who obtained an advanced education. The valuation of the supporting spouse's contribution to the education, training, or increased earning power of the dependent spouse should be limited to that compensation necessary to make the supporting spouse whole by placing a value on the lost opportunities and actual support contributions during that period which the dependent spouse pursued the educational endeavor.

I would specifically reject any compensable formula based upon future earning potential. Attempting to value the percentage of future earnings to which the supporting spouse is entitled is too speculative to be judicially recognizable. There is no guarantee that the spouse with the enhanced education will actually practice in the particular field or earn the average amounts the economists have calculated. Too many intangibles are associated with an enhanced education or degree to enable a court to prospectively value it in any award to a supporting spouse.

Although I agree with the majority and the trial court that compensation for an enhanced education may be in the form of maintenance or property division, I consider it the better legal reasoning to construe the educational degree as a marital asset, subject to division of estate. If the education is reflected in a maintenance award, it could terminate upon death of either spouse or remarriage of the receiving spouse. In such situations, the award would never be received.

The legislature, in enacting the 1979–80 statutes, specifically provided that the contribution of one spouse to the education and training leading to the increased earning power of the other spouse should be considered in awarding both property division and maintenance.[1] This is consistent with my conclusion that the value of the enhanced education may be reflected in *both* awards. The trial court may reimburse the supporting spouse for the actual financial sacrifices made in enabling the dependent spouse to obtain the education. The trial court can additionally recognize the increased earning power of the educationally enhanced or degree holding spouse in an award of maintenance to the supporting spouse.

[1] Sec. 767.26(9) and sec. 767.255(5), Stats., contain the identical language that the court shall consider "[t]he contribution by one party to the education, training or increased earning power of the other."

If the property award is discharged in bankruptcy, appropriate adjustments may be made in the maintenance award.

As the majority has pointed out in the instant case, the trial court has not specified whether Judy's compensation is in the form of property division or maintenance. (*Supra* at 6.) This is an area properly within the trial court's discretion. I would, accordingly, remand this case to the trial court for the purpose of clarifying, in light of this opinion, whether Judy's award is in the form of maintenance or property division. Unless this is done, further litigation may be necessary to determine whether the award remains payable in the event of death or remarriage.