John T. DIXON, Petitioner-Respondent,

v.

Ethyl W. DIXON, Defendant-Appellant.

Supreme Court

*No. 81–127. Argued March 29, 1982.—Decided June 2, 1982.*

(Also reported in 319 N.W.2d 846.)

For the appellant there were briefs by *Walker & Rehm* of Portage, and oral argument by *Richard Rehm.*

For the respondent there was a brief by *Fred D. Hollenbeck* and *Curran, Curran & Hollenbeck* of Mauston, and oral argument by *Fred D. Hollenbeck.*

SHIRLEY S. ABRAHAMSON, J. This appeal from a judgment of the circuit court for Columbia county, Andrew P. Cotter, circuit judge presiding, was accepted by this court on certification of the court of appeals. Sec. (Rule) 809.61, Stats. 1979–80. The court of appeals identified two questions necessitating decision by this court: (1) Is evidence of misconduct admissible in determining maintenance payments; and (2) is an order requiring limited maintenance payments subject to later modification by the circuit court. The circuit court answered both questions in the negative. We agree with the circuit court's response to the first question but not with the response to the second. For the reasons set forth below, we vacate the judgment of the circuit court and remand the matter to the circuit court for further proceedings consistent with this opinion.

I.

The parties were married August 30, 1954, and the divorce action was commenced on May 7, 1979. At the time of the commencement of the action Mrs. Dixon was 46 years of age and Mr. Dixon, 47; one of the parties' three children was an adult and two were minors (ages 16 and 14).

Mrs. Dixon received a bachelor's degree in education in 1954. She taught during the academic years 1954–1955 and 1957–1958. Between 1958 and 1970 Mrs. Dixon was a full-time homemaker and also cared for her mother and for Mr. Dixon's mother. In 1970 Mrs. Dixon began substitute teaching, and in 1978 she sought full-time teaching employment but was unsuccessful. During the 1978 academic year she taught as a substitute teacher approximately four days per month during the nine-month academic year, earning approximately $32 a day.

Mrs. Dixon suffers from high blood pressure, hypertension and nervousness. The three physicians who testified disagreed as to the level of employment Mrs. Dixon could maintain without further impairing her health, one testifying that she could hold down a full-time job and two testifying that she could not.

Mr. Dixon has a master's degree in education. He is the general manager of Fort Dells and Wisconsin Ducks at the Wisconsin Dells. When the divorce action was commenced, his annual income was $21,700; at the time of the trial his income was $31,000 (gross monthly income of $2,583), plus fringe benefits, a company car and a $7,200 annual expense account. Neither party inherited assets or brought assets into the marriage.

The circuit court stated that it attempted to arrive at a property division which would give each party 50 percent of the estate but that because of the nature of the property an equal division was not possible. The total estate was valued at $52,554, the largest single asset being the homestead, which was appraised at $46,250 and subject to a mortgage of $19,360. The circuit court awarded the homestead to Mrs. Dixon on the basis that she was granted custody of the two minor children who were living at home. Sec. 767.255(7), Stats. 1979–80. The court awarded Mr. Dixon a $11,000 lien on the home-

stead payable in November 1984 or upon the sale of the home, whichever occurs first.

Mr. Dixon's monthly net take-home pay at time of trial was $1,490.51. Mrs. Dixon's and the children's monthly budget was $1,047.25, and Mr. Dixon's was $1,430.31. The circuit court ordered Mr. Dixon to pay to Mrs. Dixon the sum of $500 per month as maintenance for a period of 30 months. The circuit court's conclusions of law stated that the court intended that the maintenance specified "shall be limited both in amount and as to the period of time within which the same is payable as provided herein and that said limited maintenance payments shall not be increased or decreased by virtue of any change in the economic circumstances of either of the parties hereto." The circuit court also provided that Mr. Dixon pay the sum of $50 per week per child for the support and maintenance of the parties' minor children.

## II.

Mrs. Dixon contends that the circuit court erred in refusing to admit evidence of Mr. Dixon's alleged marital misconduct (adultery) in determining maintenance. According to Mrs. Dixon, marital misconduct is relevant to the determination of maintenance payments, and the statutes, specifically sec. 767.26(10), Stats. 1979–80, provide that the court should, in determining maintenance payments, consider "relevant" factors.[1]

---

[1] For ease of reference we cite to the 1979–80 Statutes. Sec. 767.26, Stats. 1979–80, differs from sec. 247.26, Stats. 1977, in three respects. First, chapter 247 was renumbered chapter 767. Chapter 32, Laws of 1979. Second, subsections (a) to (h) and (i) of 767.26(1) were redesignated as subsections (1) to (8) and (10). Sec. 32, ch. 196, Laws of 1979. Third, subsection (9), relating to contributions to education, which is not relevant to this case, was added. Sec. 33, ch. 196, Laws of 1979.

Sec. 767.26, Stats. 1979–80, describes nine factors to be considered by the court in awarding maintenance. Marital misconduct is not on the list. The tenth consideration set forth in the statute, and the one upon which Mrs. Dixon relies, is a "catch-all" provision stating that the court may consider such other factors it determines to be relevant. Sec. 767.26 provides as follows:

"767.26 **Maintenance payments.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(1) The length of the marriage.

"(2) The age and physical and emotional health of the parties.

"(3) The division of property made under s. 767.255.

"(4) The educational level of each party at the time of marriage and at the time the action is commenced.

"(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

"(7) The tax consequences to each party.

"(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

"(9) The contribution by one party to the education, training or increased earning power of the other.

"(10) Such other factors as the court may in each individual case determine to be relevant."[2]

[2] Sec. 767.255, Stats. 1979–80, which governs property division, does make reference to marital misconduct. Sec. 767.255 provides in full:

"767.255 **Property division.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(h), the court shall divide the property of the parties and divest and transfer the title of any such property accordingly. A certified copy of the portion of the judgment which affects title to real estate shall be recorded in the office of the register of deeds of the county in which the lands so affected are situated. The court may protect and promote the best interests of the children by setting aside a portion of the property of the parties in a separate fund or trust for the support, maintenance, education and general welfare of any minor children of the parties. Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship on the other party or on the children of the marriage, and in that event the court may divest the party of such property in a fair and equitable manner. The court shall presume that all other property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:

"(1) The length of the marriage.

"(2) The property brought to the marriage by each party.

"(2r) Whether one of the parties has substantial assets not subject to division by the court.

"(3) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

"(4) The age and physical and emotional health of the parties.

"(5) The contribution by one party to the education, training or increased earning power of the other.

"(6) The earning capacity of each party, including educational background, training, employment skills, work experience, length

The issue of law before this court is one of statutory construction, namely, is marital misconduct a relevant factor in granting maintenance under sec. 767.26(10), Stats. 1979–80. *Sunnyview Village v. Dept. Admin.*, 104 Wis. 2d 396, 402, 311 N.W.2d 632 (1981).

This court has repeatedly stated that "[t]he aim of all statutory construction is to discern the intent of the legislature," *Green Bay Packaging, Inc. v. ILHR Dept.*, 72 Wis. 2d 26, 35, 240 N.W.2d 422 (1976), and that a "cardinal rule in interpreting statutes" is to favor a construction which will fulfill the purpose of the statute over a construction which defeats the manifest object of the act. *Student Asso. U. of Wis.-Milw. v. Baum*, 74 Wis. 2d 283, 294–95, 246 N.W.2d 622 (1976). Where one of several interpretations of a statute is possible,

of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

"(7) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having custody of any children.

"(8) The amount and duration of an order under s. 767.26 granting maintenance payments to either party, any order for periodic family support payments under s. 767.261 and whether the property division is in lieu of such payments.

"(9) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

"(10) The tax consequences to each party.

"(11) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

"(12) Such other factors as the court may in each individual case determine to be relevant."

the court must ascertain the legislative intention from the language of the statute in relation to its context, scope, history, and object intended to be accomplished. *State ex rel. First Nat. Bank & Trust Co. of Racine v. Skow,* 91 Wis. 2d 773, 779, 284 N.W.2d 74 (1979).

A review of the legislative history of the 1977 Divorce Reform Act indicates that the legislature not only was aware of the issue of the relation of marital misconduct to maintenance but tried and failed to provide direction. Sec. 767.26 was enacted in 1977 as part of ch. 105, Laws of 1977, the 1977 Divorce Reform Act. The original bill submitted to the Assembly (1977 Assembly Bill 100) included as part of sec. 767.26 a provision expressly stating that the court may not consider the marital misconduct of either party in ordering maintenance payments.[3] An amendment to this bill deleted this provision.[4] Further amendment to the bill was proposed stating that in awarding maintenance payments the court shall consider "such other factors as the Court may in each individual case determine to be relevant, *including the marital misconduct of either party.*"[5] This amendment was defeated. The legislature had the opportunity to make its intent perfectly clear as to whether the court must consider, may consider, or may not consider marital misconduct in ordering maintenance payments but apparently declined to do so.[6] In the absence of express

---

[3] "In making an order for maintenance payments, the court may not consider the marital conduct of either party." Sec. 42, 1977 A.B. 100.

[4] Assembly Amendment 10 to Assembly Substitute Amendment 1 to 1977 A.B. 100.

[5] Assembly Amendment No. 21 to Assembly Substitute Amendment 1 to 1977 A.B. 100.

[6] The Legislative Bureau Analysis for 1977 A.B. 100 states that the bill is modeled after the Uniform Marriage and Divorce Act promulgated by the National Conference of Commissioners on Uniform State Laws. Sec. 308(b) of the Uniform Marriage and Divorce Act corresponds to sec. 767.26, Stats. 1979–80, and expressly

language, we must nevertheless determine whether the legislature intended a court to exclude or include consideration of marital misconduct in awarding maintenance.

Mrs. Dixon argues that the legislature's failure to include an express direction to the court in sec. 767.26 not to consider marital misconduct means that the legislature intended to retain prior Wisconsin law allowing the

---

admonishes the court not to consider marital misconduct in awarding maintenance. Sec. 308 provides as follows:

"Sec. 308. [Maintenance].

"(a) In a proceeding for dissolution of marriage, legal separation, or maintenance following a decree of dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

"(1) lacks sufficient property to provide for his reasonable needs; and

"(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

"(b) The maintenance order shall be in amounts and for periods of time the court deems just, *without regard to marital misconduct*, and after considering all relevant factors including:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, his ability to meet his needs independently, and the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

"(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

"(3) the standard of living established during the marriage;

"(4) the duration of the marriage;

"(5) the age and the physical and emotional condition of the spouse seeking maintenance; and

"(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." (Emphasis supplied.)

court to consider marital misconduct in awarding alimony (now called maintenance).[7] While this argument has some merit, we find it unpersuasive for three reasons: First, the 1977 Divorce Reform Act is a sweeping reform which changed the divorce law in this state from a fault-based statute to a no-fault divorce law. With fault eliminated as a ground for divorce, we are not convinced that evidence of fault is relevant in deciding the financial settlement. Second, the prior law authorizing a court to consider marital misconduct in awarding alimony appears to have been based on the statutory proscription against awarding alimony to an adulterous wife; this prohibition was repealed by the 1977 Divorce Reform Act. Third, even before the 1977 Divorce Reform Act, the use of marital misconduct evidence in awarding alimony was limited. We shall discuss each of these reasons in turn.

While we acknowledge that the numerous commentators[8] and state courts[9] are divided as to whether the

[7] Judge O'Connor, who decided the motion to compel discovery, allowed discovery as to the husband's lifestyle, not for the purpose of discovering marital misconduct, but to determine if the misconduct affected the economic status of the husband. The judge ruled that "where the improper association or marital misconduct results in a substantial diminution of funds available for the court to make a fair and equitable order for maintenance payments, then that evidence will be received." Two members of the court of appeals agreed with the circuit court's view that fault evidence should be admissible only if it is shown to substantially affect the economic circumstances of the parties.

Apparently in this case the husband's expenses for the "alleged misconduct" were paid by the husband's employer, and the husband's alleged misconduct did not reduce either the marital estate or the funds available for maintenance. Accordingly evidence of the husband's misconduct was not introduced at trial, and the question of the use of misconduct for the limited purposes set forth by the circuit court is not before us.

[8] See Clark, *Divorce Policy and Divorce Reform*, 42 U. Colo. L. Rev., 403, 410 (1971); Comment, *Abolition of Guilt in Marriage Dissolution: Wisconsin's Adoption of No-Fault Divorce*, 61 Marq.

elimination of fault as ground for divorce necessarily or logically dictates the elimination of fault from questions of property division and maintenance, we conclude that the consideration of marital misconduct in determining maintenance does not comport with the legislative purpose stated in the 1977 Divorce Reform Act. By enacting the 1977 Divorce Reform Act the Wisconsin legislature abandoned the fault concept of divorce and embraced the concept of no-fault divorce, that is, that the marriage may be dissolved if it is irretrievably broken. Establishing blame for the failure of a marriage was a primary function under the prior divorce law. It was also the primary basis for criticism of that law and led to its repeal. The proponents of no-fault divorce pointed out, and the legislature apparently agreed, that usually the conduct of both spouses contributes to the failure of a marriage, that establishing guilt and innocence is not really useful, and that the adversarial nature of fault-based divorce proceedings fosters bitterness and acrimony which are detrimental to both parties and any children involved.[10]

L. Rev. 672, 688–89 (1978); Comment, *The 1977 Amendments to the Wisconsin Family Code,* 1978 Wis. L. Rev. 882, 888–89.

[9] Allowing consideration of misconduct, see *e.g., Peterson v. Peterson,* 242 N.W.2d 103 (Minn. 1976); *Hegge v. Hegge,* 236 N.W.2d 910 (N.D. 1975); *Chapman v. Chapman,* 498 S.W.2d 134 (Ky. 1973); *Huggins v. Huggins,* 57 Ala. App. 691, 331 So. 2d 704 (1976); *Kretzschmar v. Kretzschmar,* 48 Mich. App. 279, 210 N.W.2d 352 (1973); *Renner v. Renner,* 16 Md. App. 144, 294 A.2d 671 (1972).

Disallowing consideration of misconduct, see *e.g., Anderson v. Anderson,* 237 Ga. 886, 230 S.E.2d 272 (1976); *In Re Marriage of Bare,* 203 N.W.2d 551 (Iowa 1973); *In Re Marriage of Williams,* 199 N.W.2d 339 (Iowa 1972); *In Re Marriage of Rosan,* 24 Cal. App. 3d 885, 101 Cal. Rptr. 295 (1972).

See also cases cited in Annot., *Fault as Consideration in Alimony, Spousal Support, or Property Division Awards Pursuant to No-Fault Divorce,* 86 ALR 3d 1116 (1978).

[10] For a discussion of no-fault divorce see Wisconsin Legislative Reference Bureau, *The Legislative Response to Divorce: A Survey of No-Fault Divorce,* Info. Bull. 76–1B–5 (May 1976).

In keeping with the theory of no-fault divorce, the 1977 Divorce Reform Act moves away from assigning blame between the spouses for the failure of the marriage and focuses instead on the needs of the members of the family unit in the settlement of financial issues. The legislature set forth the purpose of the 1977 Divorce Reform Act as follows:

"(1) It is the intent of the legislature to emphasize the present and future needs of the parties to actions affecting marriage and their children, if any; to move away from assigning blame for a marriage failure; and to promote the settlement of financial and custodial issues in a way which will meet the real needs of all concerned persons as nearly as possible.

". . .

"(4) This act is not intended to make a divorce, annulment or legal separation easier to obtain. Its sole purpose is to promote an equitable and reasonable adjudication of the economic and custodial issues involved in marriage relationships." Sec. 1, ch. 105, Laws of 1977.

Because the legislature has declared that the focus of inquiry in the settlement of financial issues should be on the economic needs and abilities of the parties, we conclude that consideration of marital misconduct has little if any relevance in such an inquiry.

The second reason we conclude that the legislature did not intend the circuit court to consider marital misconduct is that the legislature repealed the statute prohibiting the award of alimony to a wife "guilty of adultery not condoned." [11] This statutory prohibition was apparently significant in the evolution of the case law that a court should consider marital misconduct in determining alimony. With this proscription deleted, the statutory basis for the rule no longer exists.

---

[11] 1849 Rev. Stats. ch. 79, sec. 24. See also sec. 247.26, Stats. 1975.

Third, we do not read the prior case law as holding that marital misconduct was a significant factor in awarding alimony. Before enactment of the 1977 Divorce Reform Act, the legislature provided no guidelines to the courts for the determination of alimony awards.[12] According to the case law, alimony was to be viewed from an economic standpoint, and the circuit court was to inquire into two basic factors in awarding alimony: (1) the needs of the spouse requiring maintenance; and (2) the ability of the other spouse to pay. *Van Wyk v. Van Wyk,* 86 Wis. 2d 100, 108, 271 N.W.2d 860 (1978); *Bussewitz v. Bussewitz,* 75 Wis. 2d 78, 90, 248 N.W.2d 417 (1977); *Hirth v. Hirth,* 48 Wis. 2d 491, 493, 180 N.W.2d 601 (1970).

Misconduct evidence was, however, considered by the courts in some cases. The court's consideration of a party's misconduct in awarding alimony appears to stem from a statute which, as we noted above, prohibited a court from granting alimony to a wife who was guilty of uncondoned adultery. Our court interpreted this prohibition as applying only in the event of the wife's adultery, not in the event of misconduct other than adultery. *Gray v. Gray,* 232 Wis. 400, 408–09, 287 N.W. 708 (1939). Although proof of the wife's misconduct (other than adultery) did not absolutely bar award of alimony, more recently this court has held that the marital misconduct of either of the parties, not merely the misconduct of the wife, could be considered in determining the amount of alimony and the property division. *Tonjes v. Tonjes,* 24 Wis. 2d 120, 126, 128 N.W.2d 446 (1964).

Nevertheless, even within the context of determining the amount of alimony and property division this court limited the circuit courts' consideration of marital misconduct. A court could not use the alimony award to

[12] Sec. 767.26 does reflect factors considered relevant by the court to alimony awards prior to the 1977 Divorce Reform Act.

"punish" marital misconduct. This court said: "While the trial court may consider the deliberate misconduct of the parties during the course of the marriage as a factor bearing upon division of estate and alimony payments by resolving certain ambiguities in economic position against the erring partner, he cannot utilize this variable as a device to affirmatively punish the 'guilty' party." *Tonjes, supra* 24 Wis. 2d at 126.[13] We read these prior cases as significantly limiting the circuit courts' consideration of misconduct. Whether misconduct is used to "punish" or simply to make "nonpunitive adjustments," the end result was the same: Parties guilty of misconduct did not do as well financially as they would have done had they not been guilty of misconduct. Reezer, *Marriage and Divorce* sec. 630, at p. 709 (3d ed. 1946). As a result, it is unclear under the prior law in what manner the circuit court could have legitimately used marital misconduct in determining alimony without punishing the guilty party. Perhaps the only conclusion that can be drawn is that marital misconduct was of only limited relevance in awarding equitable financial settlements even before the 1977 Divorce Reform Act.

For these reasons we hold that the legislature did not intend to allow the circuit court to consider marital misconduct a relevant factor in granting maintenance payments under sec. 767.26, Stats. 1979–80.[14]

---

[13] See also *Tesch v. Tesch,* 63 Wis. 2d 320, 330–31, 217 N.W.2d 647 (1974); *Foregger v. Foregger,* 48 Wis. 2d 512, 527–28, 180 N.W.2d 578 (1970); *Miner v. Miner,* 10 Wis. 2d 438, 446, 103 N.W.2d 4 (1960); *Luedke v. Luedke,* 215 Wis. 303, 305, 254 N.W. 525 (1934). Apparently our cases stand for the rule that marital misconduct could be used to award an equitable financial arrangement but could not be used to "punish" the guilty party.

[14] If marital misconduct were to be a factor in awarding maintenance, we would face two additional questions: (1) should the court consider condonation, recrimination and comparative recti-

## III.

The second issue which was certified to this court is whether the circuit court may modify an award of limited alimony. The judgment of the circuit court provided that the "limited maintenance payments shall not be increased or decreased by virtue of any change in the economic circumstances of either of the parties hereto." Mrs. Dixon asserts that the judgment's prohibition against modification of the amount or term of limited maintenance violates the statutes, specifically sec. 767.32, Stats. 1979–80, which expressly authorizes a court to revise or alter a judgment providing maintenance payments.

Prior to the 1977 Divorce Reform Act, the statutes expressly stated that a judgment which provides alimony for either party for a limited period "shall not thereaf-

tude; and (2) should evidence of marital misconduct be limited to the conduct of the supporting spouse, the supported spouse, or both.

On certification one judge of the court of appeals concluded that fault evidence "should be a proper factor only when the party *seeking* maintenance is guilty of misconduct." (Emphasis in original.) That judge concluded that it was "contrary to common sense that the wrongdoer, who causes the marital breakup, should then be allowed a perhaps substantial award of maintenance from the innocent party without any testimony regarding fault." Certification, appendix note 2. Thus in the instant case if we followed the views of this judge the court would not consider marital misconduct because the party paying maintenance, not the party seeking maintenance, was allegedly at fault.

The hypothetical presented by the judge of the court of appeals of a totally innocent spouse having to pay maintenance to a wrongdoer presents on first impression what appears to be an unfair situation. The immediate reaction is that the innocent spouse should not be obligated to pay maintenance. Fortunately the case presented in the hypothetical is rare, if it ever exists at all. In any event, maintenance, under the old statute, could not be granted to reward virtue or to punish wrongdoing.

*See* note 7, *supra*.

ter be revised or altered." Sec. 247.32, Stats. 1975. The Divorce Reform Act amended sec. 247.32, and the new statute, sec. 767.32, Stats. 1979–80, makes no distinction between limited and indefinite maintenance payments. Sec. 767.32 states that any judgment providing maintenance payments under sec. 767.26 may be revised and altered respecting the amount of maintenance and the payment thereof.[15]

We recognize the validity of Mr. Dixon's argument that if revision or alteration of limited maintenance is allowed, some of the advantages of limited maintenance and a significant distinction between limited and indefinite maintenance will be lost. Prohibiting modification of limited alimony does provide certainty to both parties as to their future financial rights and responsibilities and has the advantage of curtailing the number of future court hearings. See *Johnson v. Johnson*, 78 Wis. 2d 137, 154, 254 N.W.2d 198 (1977) (Abrahamson, J., dissenting.) A primary distinction under the prior stat-

---

[15] Sec. 767.32(1), Stats. 1979–80, provides as follows:

"Sec. 767.32 **Revision of judgment.** (1) After a judgment providing for child support under s. 767.25, maintenance payments under s. 767.26 or family support payments under s. 767.261, or for the appointment of trustees under s. 767.31 the court may, from time to time, on the petition of either of the parties . . . and upon notice to the family court commissioner, revise and alter such judgment respecting the amount of such maintenance or child support and the payment thereof . . . and may make any judgment respecting any of the matters which such court might have made in the original action, except that a judgment which waives maintenance payments for either party shall not thereafter be revised or altered in that respect nor shall the provisions of a judgment with respect to final division of property be subject to revision or modification."

The 1977 Divorce Reform Act (sec. 767.32) is similar to the prior law (sec. 247.32, Stats. 1975) in providing that if the judgment waives maintenance payments for either party, the judgment shall not thereafter be revised in that respect.

utes between limited and indefinite alimony was that the circuit court could not modify a judgment awarding limited alimony. There is nothing, however, in sec. 767.32 to indicate that the legislature intended the goals of economic certainty and reduced litigation to be achieved at the expense of spouses whose needs might change after judgment is entered. An important distinction between limited and indefinite maintenance remains under the 1977 Divorce Reform Act. We construe sec. 767.32 to mean that the circuit court may revise or alter the limited maintenance payments only if the petition is filed before the termination date of the limited maintenance payments set forth in the judgment.

Because sec. 736.32 explicitly authorizes the court to modify all maintenance payments, not just maintenance payments awarded for an indefinite period, we hold that sec. 767.32 allows the circuit court to revise and alter a judgment respecting the amount of limited maintenance and the terms of payment thereof as long as the petition to revise or alter limited maintenance payments is filed prior to the termination date of limited maintenance under the judgment.[16]

Because we cannot determine whether the court's award of limited maintenance payments would have been different had the circuit court made its decision on the proper premise that an award of limited maintenance payments may be revised or altered, we vacate that part of the judgment relating to limited maintenance payments and remand the issue of maintenance to the circuit court for further consideration.

[16] Our holding comports with the language of sec. 316 of the Uniform Marriage and Divorce Act which does not limit modification of awards to those awards of indefinite maintenance.

## IV.

On appeal Mrs. Dixon also asserts that the circuit court abused its discretion in its decisions relating to property division (sec. 767.255), the period for which maintenance payments are awarded (sec. 767.26), and the award of attorneys' fees (sec. 767.262). Furthermore she contends that the findings of fact, conclusions of law and the judgment are inadequate because they do not specifically assign responsibility for the payment of medical expenses of the minor children as required by sec. 767.25, Stats. 1979–80.[17]

Under the 1977 Divorce Reform Act the court's award of maintenance, property division, attorney fees and children's medical expenses are interrelated and interdependent. Because we have vacated that part of the judgment relating to maintenance, we vacate those parts of the judgment relating to property division, attorney fees and medical expenses in order to give the circuit court an opportunity to reconsider all of these issues together.[18]

---

[17] Sec. 767.25(1), Stats. 1979–80, provides *inter alia* as follows: "Sec. 767.25 **Child support.** (1) Upon every judgment of annulment, divorce or legal separation . . . the court may order either or both parents to pay an amount reasonable or necessary for support of a child and shall specifically assign responsibility for payment of medical expenses."

[18] Subsequent to the trial in the instant case this court issued several opinions interpreting the 1977 Divorce Reform Act which the circuit court should consider. See *Lundberg v. Lundberg,* 107 Wis. 2d 1, 318 N.W.2d 918 (1982); *Bahr v. Bahr,* 107 Wis. 2d 72, 318 N.W.2d 391 (1982); *Roberto v. Brown,* 107 Wis. 2d 17, 318 N.W.2d 358 (1982); *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 313 N.W.2d 813 (1982); *Jasper v. Jasper,* 107 Wis. 2d 59, 318 N.W.2d 792 (1982); *Hartung v. Hartung,* 102 Wis. 2d 58, 306 N.W.2d 16 (1981).

For the reasons set forth we vacate those parts of the judgment relating to limited maintenance, property division, attorney fees and payment of medical expenses and remand the matters to the circuit court for further consideration. Upon remand, additional evidence may be adduced to guide the court's discretion.

*By the Court.*—Judgment vacated and cause remanded for further proceedings consistent with this opinion.

CECI, J., took no part.