SPHEERIS, Respondent, v. SPHEERIS, Appellant.

*December 1—December 29, 1967.*

For the appellant there were briefs and oral argument by *Maurice Weinstein* of Milwaukee.

For the respondent there were briefs and oral argument by *Samuel Goldenberg* of Milwaukee.

WILKIE, J. Five issues are raised on the principal appeal:

1. Did the trial court incorrectly determine the defendant's net worth?

2. Is the $97,000 award to the plaintiff fair and equitable?

3. Did the trial court err in ordering the defendant to pay plaintiff's attorneys' fees, costs and disbursements of the action, and medical expenses?

4. Did the court err in specifically awarding the plaintiff certain real estate as a part of the $97,000 property division?

5. Did the court err in ordering the defendant to pay certain cash sums as a part of the property division?

These issues will be considered seriatim.

This court's standards when reviewing the findings of a trial court in a divorce action were stated in *Merten v. National Manufacturers Bank* [1] as follows:

---

[1] (1965), 26 Wis. 2d 181, 186, 131 N. W. 2d 868.

"The findings of fact of a trial court on appeal from a judgment in a divorce action must be affirmed unless clearly contrary to the great weight and clear preponderance of the evidence. *Stone v. Stone* (1896), 94 Wis. 28, 30, 68 N. W. 390; *Gordon v. Gordon* (1955), 270 Wis. 332, 340, 71 N. W. (2d) 386; *Subrt v. Subrt* (1957), 275 Wis. 628, 630, 83 N. W. (2d) 122."

*Net Worth.*

The trial court found that the defendant had a net worth of $231,250 on May 31, 1964, consisting of:

*Assets*

(1) Real Estate:

| | | |
|---|---|---|
| Residence | $28,000.00 | |
| 14th street property | 7,000.00 | |
| Browns Lake property | 7,000.00 | |
| Total real estate | | $42,000.00 |

(2) Due from Spheeris Merchandise Corp.

| | | |
|---|---|---|
| Debentures | $17,500.00 | |
| Accounts Receivable | 15,635.38 | |
| Total | | $33,135.38 |

(3) Equity in Spheeris Merchandise Corp.

| | | |
|---|---|---|
| Capital stock | $12,500.00 | |
| Share of surplus | 27,498.93 | |
| ½ of $50,000 good will | 25,000.00 | |
| Total | | $64,998.93 |

| | |
|---|---|
| (4) Equity in Spheeris Realty, Inc. | 63,923.02 |
| (5) Equity in Clay Fralick, Inc. | 61,276.58 |
| (6) Deposit with clerk of circuit court | 4,632.19 |
| Total Assets | $269,966.10 |

*Liabilities*
| | | |
|---|---|---|
| (1) Due Clay Fralick, Inc. | $26,025.00 | |
| (2) Due Spheeris Realty, Inc. | 569.10 | |
| (3) Mortgage on residence | 11,500.00 | |
| (4) Loan—Paul Spheeris | 622.00 | |

Total Liabilities $ 38,716.10

*Net Worth*
| | |
|---|---|
| (1) Total Assets | $269,966.10 |
| (2) Total Liabilities | 38,716.10 |

Net Worth $231,250.00

The defendant claims that the computation of his net worth is erroneous on two grounds. One, that the amount of $25,000 representing the good will of the Spheeris Merchandise Corporation should not have been included; and two, that the court improperly excluded $42,919.22 in liabilities.

Legal writers have had great difficulty in defining the concept of "good will." [2]

In its broadest sense the intangible asset called good will may be said to be reputation; [3] however, a better description would probably be that element of value "which inheres in the fixed and favorable consideration of customers arising from an established and well-conducted business." [4]

No rigid and unvarying rule for the determination of the value of good will has been laid down by the courts; therefore, each case must be determined on its own facts and circumstances. [5]

[2] 48 Va. L. Rev. (1962), 1274.
[3] *A. Harris & Co. v. Lucas* (5th Cir. 1931), 48 Fed. 2d 187, 189.
[4] *Colton v. Duvall* (1931), 254 Mich. 346, 349, 237 N. W. 48.
[5] 38 C. J. S., *Good Will*, p. 953, sec. 6.

For purposes of its own analysis the trial court made its own appropriate observations on the concept of good will. The trial court stated:

"Among the factors making up good will of a going business are continuity of name, business location, reputation for fair dealing and the ability of the members of the business organization; it is the increment over and above the physical assets of the business, inheres in the business and cannot be separated from the whole. While in its nature intangible, good will is uniformly recognized as a species of property and a valuable asset of the business to which it inheres; it is an incident of a continuing business having locality and name."

Spheeris Merchandise Corporation is a retail discount store located at Seventy-second and Capitol Drive in Milwaukee. The court found that the corporation had good will valued at $50,000 and that the defendant's share of the good will was $25,000.

During the trial, Howard Volz, a certified public accountant, testified on plaintiff's behalf. It was his opinion that the Spheeris Merchandise Corporation had good will valued at $52,127.96. William Brauer, a real estate broker and appraiser, testified on defendant's behalf that the corporation had no good will.

In situations such as this, it is the duty of the trier of fact to determine the credibility of witnesses and resolve the conflicting testimony.[6] Defendant claims that Mr. Volz's testimony was incompetent and should not have been considered by the trial court. Volz's opinion was grounded on one of the formulas for the computation of good will set forth by H. A. Finney, a leading authority on accounting.[7]

---

[6] *Weeden v. Beloit* (1966), 29 Wis. 2d 662, 666, 139 N. W. 2d 616; *Drane v. State* (1965), 29 Wis. 2d 208, 211, 138 N. W. 2d 273.

[7] Finney, *Principles of Accounting* (3d ed. 1946), pp. 374–382.

Initially, he determined that the average annual gross income of the Spheeris Merchandise Corporation over its three-year existence was $22,082.84. (This amount is not disputed.) He then ascertained the corporation's total capital to be $72,406.80. (This amount represented the total of the invested capital and the accumulated earnings and is also not in dispute.) Volz estimated that 12½ percent represented a fair rate of return on the total capital, which percentage of the total capital is $9,050.85; therefore, the corporation produced excess profits of $13,031.99. The excess profits were capitalized at 25 percent (*i.e.*, multiplied by four), thereby giving the $52,127.96 sum.

Defendant attacks the trial court's determination as to good will principally on the ground that the only way to establish "good will" is through a purchase price agreed upon in a voluntary arm's-length transaction. It is true that the best indicator of good will would be such a purchase price. However, there is no authority in Wisconsin that would either proscribe or preclude the use of mathematical computations to determine the value of good will. Actually, the employment of such mathematical formulas in determining good will appears to be widespread.[8]

Formulas for determining the value of good will are merely standards or guides, and are not intended to set an exact amount. As stated by the trial court:

". . . Reasonable minds may differ with respect to the formula used and the valuation made on the basis of such formula, but that does not render the opinion incompetent. In the court's opinion the objection goes to the weight of the evidence, not to its competency."

[8] 38 C. J. S., *Good Will*, p. 953, sec. 6; 14 W. Res. L. Rev. (1963), 207; 48 Va. L. Rev. (1962), 1274; Latty & Frampton, *Basic Business Associations* (1963), p. 650; Finney, *Principles of Accounting, supra,* footnote 7.

Assuming that the trial court was correct in giving considerable weight to the testimony of Mr. Volz in which he valued the good will, such computation was nevertheless based on one incorrect factor. Mr. Volz used the undisputed average yearly income *before* taxes in his computations. This amount was $22,082.84. The yearly income *after* taxes was $14,542.27. Had Volz used the after-taxes figure and kept the other components constant, the good will would have been $21,965.68 of which $10,982.84 would represent the defendant's share.

We think that in determining average annual income preliminary to the computation of good will it is correct to employ income figures after taxes, not before. This is the precise formula endorsed for federal income tax purposes.[9]

Because the finding of the trial court as to good will is based on the opinion of Mr. Volz in which his computation of good will was, in turn, predicated on determining average annual income from the income figure before taxes rather than after, we conclude that the trial court's finding in this respect was erroneous. We remand to the trial court with directions to make a new determination of good will on the basis of the proper income factor.

The defendant also contends that when it determined the defendant's net worth the trial court erroneously excluded certain income tax liabilities.

On January 16, 1964, the Bureau of Internal Revenue issued a notice of assessment ("thirty-day-letter") against the defendant for income taxes allegedly due for the years 1960–1962 in the sum of $23,225.90. On the same date assessments were also directed to the Spheeris Merchandise Corporation (defendant's share being $12,-361.57), Spheeris Realty, Inc. (defendant's share,

---

[9] ARM 34, CB 2, p. 31. *See also* A. R. R. 2954, II–2 Cum. Bull. 202 (1923); 10 Mertens, *Law of Federal Income Taxation*, pp. 92–96, sec. 59.30.

$1,380.72), and Clay Fralick, Inc. (defendant's share, $1,701.03). Defendant claims that these assessments should have been included by the trial court as liabilities, but plaintiff correctly argues that they are only contingent liabilities and, because the defendant is contesting the assessments, he may end up not paying them or paying only a portion of them. It should also be observed that if an additional tax is imposed, it will be predicated on an increase in taxable income, and, therefore, it is doubtful that the defendant's net worth will be diminished. We find no error in the trial court's exclusion of these income tax assessments.

The two other liabilities which the defendant claims were improperly excluded were $2,500 in accrued real estate taxes on the Spheeris residence and $1,750 due on a loan from defendant's attorney, Maurice Weinstein. In declining to deduct these liabilities the court said:

"Real estate taxes on the residence are not allowed as a liability for the reason that the defendant was required to pay the same under a support money and alimony order made on the 24th day of July, 1961.

"The Weinstein loan is likewise not considered a liability for the purpose of computing net worth; it was a loan incurred by the defendant to pay interest and taxes and discharge an obligation he had under an order of the court."

In *Kronforst v. Kronforst* [10] the defendant-husband claimed that he could deduct the amount of his arrearages under a court order which compelled him to pay temporary alimony from his gross estate in arriving at his net estate for distribution purposes. The court held that while the arrearages did not constitute part of the wife's division of the estate, they nevertheless were a charge against the entire estate and should be deductible. [11]

[10] (1963), 21 Wis. 2d 54, 123 N. W. 2d 528.
[11] *Id.* at page 60.

Accordingly, the court should have deducted these liabilities, in the amount of $4,250, from the defendant's net worth but was correct in not adding them to the division of property to the plaintiff. We will discuss whether the reduction in defendant's net worth results in an unfair distribution of property between the parties in our consideration of the trial court's assignment to the plaintiff of assets totaling $97,000.

### $97,000 Property Division.

The trial court awarded the plaintiff $97,000 as a property division based on the court's determination that the defendant had a net worth of $231,250. This award represented 41.95 percent of the defendant's net worth. Assuming the net worth should have been reduced by $4,250, the defendant's net worth would have been computed as $227,000, meaning that the division of property to the plaintiff represented 42.73 percent of that net worth.

Sec. 247.26, Stats., provides that the court in dividing and distributing both the real and personal estate of the husband between the parties, should give ". . . due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties and all the circumstances of the case . . . ." [12]

The statute clearly indicates that granting a property division is a matter lying within the discretion of the trial court. Therefore, the question raised is whether the amount awarded to the plaintiff was so excessive as to constitute an abuse of that discretion.

As a general rule, this court has often stated that "an award of one third of the husband's net estate to the wife

[12] Sec. 247.26, Stats.

is a proper starting point, subject to increase or decrease according to circumstances." [13]

In *Strandberg v. Strandberg* this court stated:

"Among the circumstances of the case which should be taken into consideration are age, health and ability of the parties to earn, the manner in which the estate was accumulated, the conduct of the parties, and length of the marriage." [14]

In the instant case, the plaintiff is presently forty years of age and the defendant is forty-three. The three minor children range in age from eleven to fifteen. When this action for divorce was commenced in 1961 the parties had been married a little over ten years. A wife who has given birth to and raised three children, as here, has made a significant contribution to the acquisition of the family's estate.

The defendant argues that because the three children attend school during the day the plaintiff should get a job and help support herself. This argument is successfully countered by plaintiff's claim that her health is failing.

Defendant's strongest attack on the property division is his claim that the large award has been inflicted upon him as punishment for his wrongful conduct. Defendant does not argue that his outrageous misconduct precipitated the breakup of the marriage, but that he cannot be punished for that conduct by imposition of an inequitable property division.

". . . Misconduct of a spouse may be given weight by the trial court in making a division of property, but that spouse is not to be pilloried." [15]

---

[13] *Strandberg v. Strandberg* (1967), 33 Wis. 2d 204, 207, 147 N. W. 2d 349, citing *Gauger v. Gauger* (1914), 157 Wis. 630, 147 N. W. 1075, and *Radandt v. Radandt* (1966), 30 Wis. 2d 108, 140 N. W. 2d 293. *See also, Schneider v. Schneider* (1961), 15 Wis. 2d 245, 112 N. W. 2d 584.

[14] *Supra*, footnote 13, at page 207.

[15] *Trowbridge v. Trowbridge* (1962), 16 Wis. 2d 176, 182, 114 N. W. 2d 129, citing *Barrock v. Barrock* (1950), 257 Wis. 565,

It is extremely difficult to draw the line between a division of property that takes into account misconduct of one of the parties and one that goes beyond this and utilizes the division as a means of punishment.[16] In the trial court's decision is stated:

"The court must find from the record that the defendant's conduct toward the plaintiff constituted outrageous mistreatment and under well settled principles justifies a larger allowance by way of property division than would otherwise be permissible."

Our conclusion is that the trial court's division of property did not constitute punishment of the defendant. The award of 41.95 percent (or 42.73 percent if computed on the basis of deducting $4,250 in liabilities) is not excessive. Of course, in view of our earlier determination that the net worth computation was in error, on remand the trial court is directed to make a corresponding reduction in plaintiff's division of property reflecting the correction in the good will determination.

*Plaintiff's Attorneys' Fees, Costs and Medical Expenses.*

The trial court ordered defendant to pay plaintiff's attorneys' fees in the following amounts:

| | |
|---|---|
| N. P. Phillips | $10,000.00 |
| E. Meldman | 750.00 |
| John Udovc | 600.00 |
| John Wessel | 347.00 |
| Total | $11,697.00 |

Regarding attorneys' fees, the trial court said:

"(1) The plaintiff had a total of five attorneys. It would not be fair and just to require the defendant to bear all this legal expense.

570, 44 N. W. 2d 527; *Manske v. Manske* (1959), 6 Wis. 2d 605, 95 N. W. 2d 401.

[16] *Kronforst, supra,* footnote 10, at page 62.

"Mr. Phillips submitted a bill of $18,170.00 for legal services exclusive of $500.00 previously paid to him on account pursuant to court order. His fee is fixed *in full* at $10,000.00 (additionally to the $500.00 previously paid him) to be paid by the defendant forthwith.

"Mr. Edward Meldman has a balance of $750.00 for legal fees. Mr. John Wessel and Mr. John Udovc have balances for legal services rendered in this case in the amounts of $347.00 and $600.00, respectively. The court has reviewed the record and will allow these balances as costs and require the defendant to pay them."

This court has said:

"The matter of allowance of attorney fees in a divorce case is discretionary with the trial court, and unless it can be shown that the court abused its discretionary power, this court will affirm the determination made by the trial court. *Brackob v. Brackob*, 262 Wis. 202, 207, 54 N. W. (2d) 900." [17]

The general rule is that in divorce proceedings, a wife may be allowed a sum to "defray" the costs of attorneys' fees.[18] Likewise, this court has spoken of a husband paying a "portion" of his wife's attorneys' fees.[19]

The above-quoted language from the trial court's decision indicates that the defendant is being obligated to pay plaintiff's entire attorney bill.

On remand the trial court is directed to reconsider the judgment insofar as attorneys' fees are concerned, towards the end that a judgment be entered on the matter of attorneys' fees resulting in a contribution towards plaintiff's attorneys' fees by the defendant rather than making him responsible for the entire amount.

Defendant also questions the order of the court requiring that he pay $3,118.05 in costs and disbursements. In contrast to the matter of plaintiff's attorneys' fees

[17] *Julien v. Julien* (1953), 265 Wis. 85, 90, 91, 60 N. W. 2d 753.

[18] 27A C. J. S., *Divorce*, p. 934, sec. 216.

[19] *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 158, 138 N. W. 2d 185.

the record of his costs and disbursements clearly indicates that this amount is only a *contribution* toward the entire expense incurred by the plaintiff in prosecuting the action and is not, as defendant contends, the entire amount. The court did not, therefore, abuse its discretion in imposing this obligation upon the defendant.

Regarding medical expenses, the court's conclusion of law stated:

"Sixth: That the defendant, Andrew J. Spheeris, shall forthwith pay all of the medical, surgical and dental bills outstanding for the plaintiff, Elene Spheeris, and the minor children of the parties, as per the previous orders made herein; and that the defendant shall save the plaintiff harmless therefrom from any claim, demand or charges on account thereof."

The judgment states:

"12. It is further adjudged:
"That the defendant, Andrew J. Spheeris, shall forthwith pay all of the medical, surgical and dental bills outstanding for the plaintiff, Elene Spheeris, and the minor children of the parties, as per the previous orders made herein; and that the defendant shall save the plaintiff harmless therefrom from any claim, demand or charges on account thereof, and shall be responsible to furnish and pay for all medical, hospital and dental expenses of the plaintiff and the minor children of the parties."

Defendant does not take issue with this award inasmuch as it pertains to the children. His claim is that, in light of the other substantial awards given to the plaintiff, imposition of this further obligation is inequitable. Defendant argues that the plaintiff will receive monthly payments of $550. However, defendant neglects to point out that $400 of that amount is attributable to support of the children. The plaintiff is only to receive $150 a month as alimony. Under the circumstances, we do not think that imposition of this additional obligation for medical expenses of the plaintiff constitutes an abuse of discretion.

*Award of Certain Real Estate.*

As part of the property division, the trial court awarded the plaintiff title to certain real estate located on North Fourteenth street in Milwaukee. The stipulated value of the real estate is $7,000. Defendant, relying on *Wetzel v. Wetzel*,[20] argues that he should have the option of paying $7,000 cash in lieu of giving up the property.

This particular real estate was given to the defendant as a gift from his father. It appears that the defendant's brothers own neighboring property. Defendant claims that the only purpose served by giving his property to the plaintiff is harassment of the defendant and his brothers inasmuch as the time may come when they decide to develop the area into income producing property and her ownership could cause problems.

In *Wetzel* the trial court, as part of a property division, granted the wife a one-third interest in the husband's business. This court reversed, saying:

"While this court has approved an award of one third of the net estate as a starting point in the division of property, whether or not alimony is given in addition thereto, this court has not required the one-third share or any share of a division to be *in specie* or in kind and applicable to each item comprising the estate to be divided. In small estates it may be that such a division is the only possible division, but when there are sufficient assets as in the instant case it would seem that any form of joint control or ownership of assets by divorced persons should be avoided. The elimination of the source of strife and friction is to be sought and the financial affairs of the divorced parties separated as far as possible. If the parties cannot get along as husband and wife it is not likely they will get along as partners in business."[21]

We conclude that the defendant should have been given an option of either paying $7,000 in cash or transferring

[20] (1967), 35 Wis. 2d 103, 150 N. W. 2d 482.
[21] *Id.* at pages 108, 109.

the property on North Fourteenth street in kind. Considering the circumstances of the parties and the need for eliminating sources of future strife and friction, we conclude that it was an abuse of discretion not to have provided for this option.

## *Cash Sums.*

As part of the property division, the trial court ordered the payment of cash as follows: $25,000 upon judgment; $8,688.06 on July 7, 1967; $8,688.06 on July 7, 1968; and $8,688.05 on July 7, 1969, totaling $51,064.17.

Defendant contends that payment of these sums, plus the costs and fees, will impose an extreme hardship on him which will result in financial disaster.

The deferred payment plan indicates that the trial court considered the defendant's ability to pay and no clear abuse of discretion has been demonstrated.

## *Attorneys' Fees on Appeal.*

As to the additional appeal by the defendant, the trial court's order as to attorneys' fees, entered June 8, 1967, is in clear violation of the provisions of sec. (Rule) 251.72, Stats., in that that order was entered after the return of the record to this court. The statute provides:

"In divorce and legal separation actions pending in this court, no allowance for suit money, counsel fees or disbursements in this court, nor for temporary alimony or maintenance of the wife or children during the pendency of the appeal will be made in this court.

"Such allowances, if made at all, shall be made by the proper trial court upon motion made and decided after the entry of the order or judgment appealed from and prior to the return of the record to this court, provided, that if such allowance be ordered before the appeal is taken such order shall be conditioned upon the taking of the appeal and shall be without effect unless and until the appeal be perfected."

Accordingly, the order of June 8, 1967, is invalid and should be stricken.

*By the Court.*—Judgment reversed and cause remanded to the trial court for further proceedings not inconsistent with this opinion. The order of June 8, 1967, reversed. Costs on both appeals to appellant.