IN RE the MARRIAGE OF:

Tracy J. McReath, Petitioner-Respondent,

v.

Timothy J. McReath, Respondent-Appellant.†

Court of Appeals

*No. 2009AP639. Submitted on briefs January 22, 2010.
—Decided July 29, 2010.*

2010 WI App 101

(Also reported in 789 N.W.2d 89.)

† Petition for Review granted 12-7-10.

155

Before Dykman, P.J., Vergeront and Lundsten, JJ.

¶ 1. LUNDSTEN, J. In this divorce case, we address

whether there is or should be a rule that excludes the value of salable professional goodwill from divisible property. The husband, Tim, is a dentist with an orthodontic practice that he acquired early on in this long-term marriage. Tim argues that the circuit court erred as a matter of law when it treated the professional goodwill portion of the valuation of his practice as divisible property. Tim contends that although he could sell his practice for just over one million dollars, most of that amount is attributable to non-divisible professional goodwill. It follows, according to Tim, that the circuit court applied an incorrect legal standard when it treated the full $1,058,000 valuation as an amount subject to division. We disagree. There is no existing rule that requires the exclusion of salable professional goodwill from divisible property, and we decline to adopt a blanket rule to that effect. Accordingly, the circuit court did not err as a matter of law. Because Tim's challenge on appeal hinges on this single issue, we affirm the circuit court.

¶ 2. In deciding this case, we enter an area that has been "hotly debated" in jurisdictions across the country for at least thirty years.[1] The topic has aptly been characterized as a "quagmire for courts."[2] We do not, in this decision, pull Wisconsin out of this quagmire. Rather, we clarify some of the issues and resolve the dispute before us by declining to adopt a blanket rule excluding salable professional goodwill from divisible property.

[1] *See* Kelly Schroeder, Comment, *Fair and Equitable Distribution of Goodwill in an Ohio Divorce Proceeding*, 31 U. Dayton L. Rev. 83, 83 (Fall 2005).

[2] Christopher A. Tiso, *Present Positions on Professional Goodwill: More Focus or Simply More Hocus Pocus?*, 20 J. Am. Acad. Matrimonial Law. 51, 51 (2006).

## Background

¶ 3.   Tim and Tracy McReath were married in 1988 and their divorce was final in 2008. They have three children. Tim is a dentist with a specialty in orthodontia. He is the sole owner of "Orthodontic Specialists," with offices in Baraboo and Portage.

¶ 4.   At the divorce trial, Tim and Tracy disputed the value of Orthodontic Specialists. Tracy's primary valuation expert relied on an income approach to valuing Tim's dental practice. That is, the expert looked at the income Tim's practice generated and estimated what the practice would be worth to a purchasing orthodontist. Using this method, Tracy's expert estimated that Tim could sell his practice for $1,058,000. The circuit court accepted this valuation and expressly rejected valuation opinions offered by Tim's expert.[3]

¶ 5.   It is undisputed that the goodwill component of the valuation is the difference between the full valuation, $1,058,000, and the value of the tangible assets, $247,000. Thus, total goodwill, both "professional" and "corporate," is $811,000.[4] Although there was no evidence identifying some specific portion of this

---

[3] The circuit court rejected Tim's expert's valuation ($415,000) for several reasons. For example, the circuit court observed that Tim's expert's valuation was inconsistent both with the fact that Tim paid about $900,000 for the practice in the 1990's and with the practice's consistently high earnings.

[4] We follow the parties' lead and use the terms "professional goodwill" and "corporate goodwill." We note that "professional goodwill" is also commonly referred to as "personal goodwill." Also, "corporate goodwill" goes by many names, including "business goodwill," "going concern value," "commercial goodwill," and "enterprise goodwill."

total goodwill as professional goodwill, the circuit court assumed that a significant portion was professional goodwill.[5]

¶ 6. It is also undisputed that a purchaser paying the $1,058,000 price would insist that Tim agree not to compete with the purchaser, via a non-compete agreement. For purposes of this decision, we adopt Tim's assumption that a non-compete agreement would be a means of transferring some portion of Tim's professional goodwill.

¶ 7. When addressing property division, the circuit court included the full $1,058,000 valuation as divisible property. As a result, Tracy received half of that amount. Turning to the question of maintenance and child support, the court examined the income available to the parties. The court calculated Tim's earnings from his orthodontic practice by looking at his average net cash flow over the five years preceding the divorce and making some adjustments to that average. Relying primarily on this earnings number, the court ordered Tim to pay maintenance to Tracy at the rate of $16,000 per month for twenty years.

---

[5] Tim asserts that the circuit court found, "without an evidentiary or logical basis – that *all* of the goodwill associated with Orthodontic Specialists was corporate goodwill." We disagree with this characterization. On the page of the transcript that Tim relies on, the circuit court merely recites that one of Tracy's experts allocated all of the practice's goodwill to corporate goodwill. The circuit court did not adopt that view. To the contrary, as Tim points out, the court noted that "[g]iven the nature of [Tim's] business one would expect that there could be significant [professional] goodwill." It is more accurate to say that the circuit court recognized that some portion of the $1,058,000 valuation was attributable to professional goodwill, but declined to exclude an amount from divisible property based on that fact.

159

## Discussion

¶ 8. Our attention here is directed at the goodwill component of the valuation of Tim's orthodontic practice. The court found that Tim could sell his practice for $1,058,000. This $1,058,000 valuation is comprised of three components: the value of the tangible assets, the value of "corporate goodwill," and the value of "professional goodwill."[6] Thus, there is no dispute that the professional goodwill at issue here is salable.

¶ 9. What is disputed here is whether the circuit court erred as a matter of law by treating the value of Tim's salable professional goodwill as divisible property.

¶ 10. Tim argues that, under controlling case law, professional goodwill is not a divisible asset, even if it is salable. Tim reasons that professional goodwill should never be divisible because it is inextricably linked to earnings. According to Tim, it follows that it is unfair to divide the value of his professional goodwill and then also base maintenance payments, in part, on the earnings that flow from that same professional goodwill, something referred to in the case law as "double counting."[7]

¶ 11. Tracy, for the most part, sidesteps the professional goodwill debate. In her view, the bottom line is

[6] Although Tracy sometimes insists that all of the goodwill is corporate goodwill, this assertion conflicts with the circuit court's observation that it expected there was significant professional goodwill.

[7] The term "double counting," or a similar term, appears in many published cases. We used the term "double counting" in *Holbrook v. Holbrook*, 103 Wis. 2d 327, 352, 309 N.W.2d 343 (Ct. App. 1981). Another often-cited case discussing this concept using a similar term is *Butler v. Butler*, 663 A.2d 148, 156 (Pa. 1995) ("a double charge on future income").

whether a business has *salable goodwill* and, because all of the goodwill at issue here is salable, it is divisible property.

¶ 12.   We begin our discussion with some preliminary clarifications and observations, and then address and reject Tim's arguments.

¶ 13.   Neither of the parties provides a clear definition of either "corporate goodwill" or "professional goodwill." This is explained in large part by a lack of clarity in Wisconsin case law. For example, Tim relies on *Spheeris v. Spheeris*, 37 Wis. 2d 497, 504, 155 N.W.2d 130 (1967), for a definition of *corporate* goodwill. Although the goodwill at issue in *Spheeris* may have been corporate goodwill, the court did not attempt to provide a definition of that specific type of goodwill. Rather, the court was more broadly discussing the meaning of "the intangible asset called good will." *Id.* The court wrote:

> Legal writers have had great difficulty in defining the concept of "good will."
>
> In its broadest sense the intangible asset called good will may be said to be reputation; however, a better description would probably be that element of value "which inheres in the fixed and favorable consideration of customers arising from an established and well-conducted business."
>
> No rigid and unvarying rule for the determination of the value of good will has been laid down by the courts; therefore, each case must be determined on its own facts and circumstances.

*Id.* (footnotes omitted). Nowhere does the *Spheeris* court mention "corporate goodwill" or any synonym for that term. Thus, the *Spheeris* court did not provide a definition of corporate goodwill, much less define it in a way that distinguishes it from professional goodwill.

161

¶ 14. Similarly, Tim's discussion of "professional goodwill" is unsatisfying because the case he relies on, *Holbrook v. Holbrook*, 103 Wis. 2d 327, 309 N.W.2d 343 (Ct. App. 1981), does not provide a working definition for that term. We discuss *Holbrook* in greater detail below, but, pertinent here, our *Holbrook* decision neither defines nor discusses *salable* professional goodwill, which is the subject of the dispute here.

¶ 15. It appears to us that if, as Tim proposes, all professional goodwill is to be excluded from a business valuation for purposes of identifying divisible property, circuit courts would need a working definition of just what it is they are supposed to exclude. Many questions come to mind. Are corporate goodwill and professional goodwill truly distinct, or do they overlap? How does a monopoly in a geographic area—like Tim's—affect determinations of corporate goodwill and professional goodwill? Is such a monopoly a component of corporate goodwill or professional goodwill? If monopoly status is a component of corporate goodwill, how does one go about differentiating the business value attributable to monopoly status from the business value owing to Tim's professional skills and reputation?[8]

---

[8] A fact demonstrating the existence of goodwill in Tim's practice is its "conversion ratio," the percentage of new potential patients who visit and then become actual patients. In Tim's practice, conversion is 75%, compared with an industry average of about 50%. Tim's counsel attempted to establish that this high conversion ratio was a product of Tim's skill and reputation and, therefore, Tim's professional goodwill. But another explanation given by Tracy's expert for this high conversion ratio is that Orthodontic Specialists, the business entity, enjoys a near monopoly on orthodontic services in the geographical areas where its offices are located.

¶ 16. As we shall see, one particular definitional issue has caused considerable ongoing confusion, namely, the assumption on the part of some courts that professional goodwill, by definition, is not salable. This is plainly not true, as the record before us demonstrates.

¶ 17. Although Tim sometimes seems to take the position that professional goodwill is not divisible because it is not salable, he ultimately agrees that he is challenging the inclusion of salable professional goodwill. Tim states: "[Tracy's expert] undisputedly assumed that Tim would provide the notional buyer a non-compete agreement; thus, [Tracy's expert's] valuation of Tim's practice necessarily included the value of Tim's professional goodwill." Consistent with this view of the current value of the practice, Tim testified that the lion's share of the purchase price he paid in 1996 was for professional goodwill.[9]

¶ 18. This brings us to another matter in need of clarification, non-compete agreements. One of the primary mechanisms through which professional goodwill is sold is a non-compete agreement. In this case, Tim's and Tracy's experts agreed that no reasonable buyer would purchase Tim's practice without an agreement preventing Tim from competing in the two communities where Tim's offices are located. There is no dispute that the hypothetical willing buyers, envisioned by all of the experts, would demand a non-compete agreement and no serious dispute that, if a sale occurred, the

---

[9] Tim testified that he paid about $930,000 for the practice and that 89% of this amount (about $830,000) was for "professional goodwill," with the remainder attributable to tangible assets and "corporate goodwill."

non-compete aspect of the sale would be a mechanism for the transfer of some portion of Tim's professional goodwill to the buyer.

¶ 19.  Thus, looking at the total value of the orthodontic practice accepted by the circuit court ($1,058,000), there is no serious dispute that a significant, but unspecified, portion of this amount is attributable to salable professional goodwill. In Tracy's view, it is unnecessary to isolate professional goodwill because *all* salable goodwill is divisible. Under Tim's proposal, we would need to remand for a determination of the value of the salable professional goodwill so that it could be excluded. Because we resolve this dispute by explaining that there is no existing rule requiring the exclusion of salable professional goodwill from divisible property and by declining to adopt a blanket rule to that effect, the absence of evidence of the particular amount of professional goodwill does not matter.

¶ 20.  We now turn our attention to Tim's two primary arguments. First, he argues that existing case law prohibits treating any of his professional goodwill, salable or not, as divisible property. Second, he implicitly argues that, even if existing case law does not compel the result, we should now hold, based on "double counting," that none of his professional goodwill is divisible. We address and reject each argument.

*A. Existing Case Law Does Not Contain*
*A Prohibition On Treating Salable Professional*
*Goodwill As Divisible Property*

¶ 21.  Tim places primary reliance on two cases, *Holbrook*, 103 Wis. 2d 327, and *Peerenboom v. Peerenboom*, 147 Wis. 2d 547, 433 N.W.2d 282 (Ct. App. 1988).

According to Tim, *Holbrook* explains that professional goodwill is inextricably linked to professional skill and reputation and is typically not divisible property. Turning to *Peerenboom*, Tim asserts that the case holds, in effect, that professional goodwill is not divisible property. We disagree with Tim's reading of both cases.

¶ 22. Tim points to the following statement in *Holbrook*: "We are not persuaded that the concept of professional goodwill as a divisible marital asset should be adopted in Wisconsin." *Holbrook*, 103 Wis. 2d at 350. This statement, however, must be read in context. We did not, in *Holbrook*, address all professional goodwill; rather, we were addressing the *non-salable* professional goodwill at issue in that case.

¶ 23. The disputed goodwill in *Holbrook* was a lawyer's goodwill in a law firm. We explained that this goodwill was a function of the lawyer's contribution to the good reputation of his law firm and the corresponding added value to that firm. *See id.* We concluded that this "asset" was not divisible property because it was not salable. *Id.* at 351. As such, we likened it to a professional education that cannot be sold, but, rather, merely reflects increased earnings capacity. *Id.* at 350–51. We explained:

> Like an educational degree, a partner's theoretical share of a law firm's goodwill cannot be exchanged on an open market: it cannot be assigned, sold, transferred, conveyed or pledged. Although we recognize the factual distinction between a degree-holder and a partner or shareholder in a law firm, . . . [in] both cases, the "asset" involved is *not salable* and has computable value to the individual only to the extent that it promises increased future earnings.
>
> There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of

165

intangible assets at a judicially determined value that *could not be realized by a sale or another method of liquidating value.*

*Id.* at 351 (emphasis added; footnotes omitted). We contrasted this non-salable goodwill with the salable goodwill of a commercial business, observing: "We do not think the same inequities arise when the goodwill value of a commercial business is included in the assessment of the total worth of the business for purposes of property division." *Id.* at 351 n.61 (citing *Spheeris*, 37 Wis. 2d at 504–07).

¶ 24.  Thus, the key to *Holbrook* is understanding that it addresses professional goodwill that cannot be sold. At most, *Holbrook* supports the proposition that *non-salable* professional goodwill is not a divisible asset.[10] *Holbrook* does not contain a blanket holding that professional goodwill may never be treated as divisible

---

[10] And even this aspect of *Holbrook*, 103 Wis. 2d 327, has been called into question. In *Holbrook*, our reasoning largely consisted of comparing non-salable professional goodwill with the value of an advanced degree which, under *DeWitt v. DeWitt*, 98 Wis. 2d 44, 296 N.W.2d 761 (Ct. App. 1980), was nondivisible. But *DeWitt* has, at least implicitly, been modified by a subsequent supreme court decision. In *DeWitt*, we held that a professional degree earned by one spouse during a marriage is not divisible property, even when the degree is obtained partly through the efforts of the other spouse. *Id.* at 56–60. However, two years later, in *Lundberg v. Lundberg*, 107 Wis. 2d 1, 318 N.W.2d 918 (1982), the supreme court held that "[c]ompensation for a person who supports his or her spouse while the spouse is in school can be achieved through both *property division* and maintenance payments." *Id.* at 10 (emphasis added). The *Lundberg* court approved payments totaling $25,000 to a spouse in recognition of the financial assistance she provided to help obtain "the most significant asset of the marriage," her husband's medical degree. *Id.* at 14.

property. In *Holbrook*, we did not, as we do here, address a situation in which the evidence and fact finding show that some portion of professional goodwill is salable.[11]

¶ 25. We turn our attention to our later *Peerenboom* decision. Tim interprets *Peerenboom* as holding that divisible goodwill may never include any value attributable to a "professional's skills and services," which he equates to professional goodwill. We disagree.

¶ 26. In *Peerenboom*, we distinguished the solo dental practice before us from the law firm in *Holbrook*, noting that the solo dentist, unlike the law firm lawyer, was not ethically or contractually prohibited from selling his "interest" in his business. *Peerenboom*, 147 Wis. 2d at 552. We stated:

[C]are must be taken to ensure that the goodwill is indeed a separate asset, rather than the established

---

[11] Arguably, our decision in *Lewis v. Lewis*, 113 Wis. 2d 172, 336 N.W.2d 171 (Ct. App. 1983), a case neither Tim nor Tracy discusses, has already clarified that *Holbrook*, 103 Wis. 2d 327, is limited to non-salable goodwill. In *Lewis*, we addressed the use of a cross-purchase agreement in valuing a professional practice, an animal clinic. We explained that the circuit court erred by reading *Holbrook* as barring the court from considering the formula set out in the cross-purchase agreement because the formula includes some compensation for professional goodwill. *Lewis*, 113 Wis. 2d at 180. We wrote: "To the extent that the purchase amount [in the cross-purchase agreement formula] includes compensation for professional goodwill, the cross-purchase agreement establishes a concrete 'method of liquidating value,' *Holbrook*, at 351, 309 N.W.2d at 355, and, therefore, the trial court may use the entire purchase amount as a guide in valuing [the veterinarian's] partnership interest." *Id*. We do not, however, place our reliance on *Lewis* because there may be differences between *Lewis* and this case owing to the fact that *Lewis* involved a cross-purchase agreement.

employment or earning capacity of the professional. If [goodwill] is not established as a separate asset, but merely a measure of earning capacity, its value would then improperly be taken into consideration more than once.

*Id.* Thus, our focus was on whether goodwill was salable or, instead, "*merely* a measure of earning capacity." *Id.* (emphasis added). We remanded with directions that the circuit court determine whether there was "marketable" goodwill. *Id.* at 552–54.

¶ 27. Tim relies on the following statement in *Peerenboom*: "[T]o the extent that the evidence shows that the goodwill exists, is marketable, and that its value is something over and above the value of the practice's assets *and the professional's skills and services,* it may be included as an asset in the marital estate and be subject to division." *Id.* at 552 (emphasis added). Tim interprets this sentence as recognizing a distinction between marketable corporate goodwill, which is divisible, and professional goodwill, which is not divisible. Thus, Tim interprets *Peerenboom* as holding that divisible goodwill may never include value attributable to a "professional's skills and services," which he equates to professional goodwill. However, as in *Holbrook,* our discussion focused on the distinction between "marketable" (i.e., salable) goodwill and non-marketable goodwill. *Peerenboom,* 147 Wis. 2d at 552. Read in context, our use of the phrase "professional's skills and services" is a reference to the sort of non-salable professional goodwill at issue in *Holbrook.* There is no hint in either *Holbrook* or *Peerenboom* that we considered whether *salable* professional goodwill should be divisible property.

¶ 28. Accordingly, neither *Holbrook* nor *Peerenboom* resolves whether *salable* professional goodwill may be treated as divisible property.

168

¶ 29. Before moving on, we pause briefly to observe that our review of case law and commentary in this area reveals that the failure to distinguish salable from non-salable professional goodwill is commonplace. Typical is the discussion of professional goodwill found in a comment in the University of Dayton Law Review. *See* Kelly Schroeder, Comment, *Fair and Equitable Distribution of Goodwill in an Ohio Divorce Proceeding*, 31 U. Dayton L. Rev. 83 (Fall 2005). In this comment, the author advocates excluding professional goodwill from divisible assets, but one of the author's assumptions is that professional goodwill is not salable. *See id.* at 89 ("Personal goodwill is not alienable, and the value of personal goodwill cannot survive the disassociation of the individual from the business."). However, as the facts in the case before us make plain, professional goodwill, or at least some portion of it, is frequently salable.

¶ 30. Even commentary that recognizes a difference between salable and non-salable professional goodwill does not necessarily hit the mark. For example, in an article found in the Journal of the American Academy of Matrimonial Lawyers, the author makes a promising start when he states that "realizable" (i.e., salable) goodwill should be divisible because it can be converted to cash by selling the business in the open market. *See* Christopher A. Tiso, *Present Positions on Professional Goodwill: More Focus or Simply More Hocus Pocus?*, 20 J. Am. Acad. Matrimonial Law. 51, at 53–54 (2006). Even more promising, the author goes on to note "the legitimate double-dipping concerns of counting the goodwill—especially the goodwill attaching personally to the professional—both as a marital asset subject to division and as a source of future earnings to pay alimony and support." *Id.* at 57. But

there is no follow-through. The ensuing discussion merely reviews case law and does not provide a proposal for the dilemma created when professional goodwill has an ascertainable salable value and, at the same time, is a source of earnings used to calculate maintenance.

¶ 31. Regardless of *Holbrook, Peerenboom*, and other non-binding authorities, it is apparent that Tim takes the position that we should hold that professional goodwill is never divisible property. Thus, we turn our attention to Tim's central argument: unfair double counting.

## B. Double Counting

¶ 32. Most property that is subject to division in a divorce proceeding is not intertwined with earnings. Real estate and cars, for example, normally have no relationship to the earnings of either spouse. This case is difficult because the disputed property subject to division is Tim's dental practice, which is both salable property and the primary source of Tim's earnings. As Tim explains, in this situation, if the portion of the value of the practice attributable to professional goodwill is included as divisible property, a sort of "double counting" occurs if the full value of the practice is treated as a divisible asset and, then, maintenance is based on earnings, which, in turn, depend in large part on the same professional goodwill.

¶ 33. Tim's solution to this "double counting" issue is to exclude all professional goodwill, regardless whether it is salable, from property division. Tracy does not concede that double counting is a problem. Her primary argument is that all *salable* goodwill, regardless how it is labeled, should be included in the divisible value of the orthodontic practice. Tim's double counting

concern suggests a third alternative that we discuss below: include salable professional goodwill as divisible property, but then deal with the double counting issue by making an adjustment when determining maintenance.

¶ 34. In the sections below, we first explain why we reject Tim's proposal. We then explain why we decline to adopt a rule directing courts to deal with this issue by making an adjustment to maintenance. We then turn to Tracy's position.

### 1. Tim's Proposal

¶ 35. We understand Tim's primary argument to be based on the prospect of "double counting." Tim asserts that it is unfair to treat the value of his professional goodwill as a divisible asset, to give Tracy half the value of that asset, and then also to calculate maintenance based on Tim's earnings, which are enhanced by that same professional goodwill. Tim contends that this approach effectively gives Tracy a double-dip. According to Tim, "Tracy is entitled to either (1) one-half the orthodontic practice's fair market value, including Tim's professional goodwill, or (2) an award of maintenance reflecting Tim's future earning capacity from the practice. She is not entitled to both . . . ."

¶ 36. We agree with Tim that if he continues in his practice there will be some "double counting." But, for several reasons, we decline to adopt Tim's proposed blanket prohibition on including salable professional goodwill as divisible property.

¶ 37. First and foremost, if Tim's blanket prohibition is adopted, unfairness will plainly be the result in some circumstances. For example, suppose a divorcing

171

dentist with a successful practice, and substantial salable professional goodwill, is also planning to retire in about a year. Under Tim's proposal, the spouse of that dentist would not share in the full value of the business, a value that will be realized just a year after the divorce. At the same time, maintenance would be set with the knowledge that retirement is imminent. To make this example more concrete, suppose the dentist Tim purchased his practice from was retiring according to a longstanding plan and was also recently divorced. Tim testified that he paid $930,000 for the practice, with about $830,000 of that amount attributable to professional goodwill and the remaining $100,000 attributable to tangible assets and corporate goodwill. If the experts in this hypothetical divorce proceeding back in the 1990's estimated the tangible assets and corporate goodwill in keeping with the sale to Tim, and the judge applied Tim's proposed rule, the dentist's wife would have received $50,000 as her share of the asset and the dentist would later net $880,000 as his share of the same asset (Tim's $930,000 purchase price less $50,000 to the ex-spouse leaves $880,000 for the dentist).

¶ 38.   Similarly, suppose a maintenance-paying dentist, in his or her prime earning years, dies unexpectedly shortly after a divorce. If the dental practice was not divided at its full value, including salable professional goodwill, the non-dentist spouse would lose out in a manner similar to the ex-spouse of the retiring dentist discussed above.

¶ 39.   For that matter, Tim's proposal would prohibit including salable professional goodwill even when no maintenance is ordered. In Tim's view, professional goodwill is, simply, a non-divisible asset. Thus, even when there is no potential for double counting, the non-professional spouse would lose out. These ex-

172

amples demonstrate the unfairness of a blanket prohibition on including salable professional goodwill as divisible property.

¶ 40. We note that one Wisconsin commentator has argued that the value of *all* goodwill should be excluded from divisible property on the ground that battles over this highly speculative intangible asset are often devastatingly expensive to the divorcing parties. Taking, as an example, a divorce involving a dispute over the value of a small professional business, this commentator states that "the trial of such a case would be a picnic for the attorneys on both sides, converting what might have been a stipulated divorce (based on an assessment of more tangible values) into a monument to the complexity and inequity of the legal system." John P. Schuster, *Valuation of Professional Practices: An Unnecessary and Costly Battlefield,* Vol. 2, No. 2, Wis. J. Fam. L. 20, at 21 (Dec. 1982) (found in Vols. 1–5, Wis. J. Fam. L., 1981–1986 (Wis. State Law Library)). Although we share this commentator's concern, we do not follow his advice because his proposal does not address the inequity we describe in ¶¶ 37–39, above. In addition, his proposal involves excluding the value of *all* goodwill. We do not have that option because, under settled case law, corporate goodwill is divisible. If corporate goodwill remains divisible, but professional goodwill is not, the problem this commentator has identified would persist in many cases because experts would still need to address inevitable disputes over the apportionment of goodwill between corporate and professional.

¶ 41. Returning to Tim's proposed blanket exclusion of salable professional goodwill from divisible property, the second reason we reject it is because we have

no basis on which to conclude that "double counting" is a significant problem. More to the point, we have no reason to think that completely excluding the value of salable professional goodwill from divisible assets makes economic sense. Taking this case as an example, acknowledging that some degree of "double counting" may occur is not the same as understanding the dollar value relationship between the amount Tracy received in the property division attributable to salable professional goodwill and the portion of her maintenance payments attributable to professional goodwill.

¶ 42.    Here, Tim did not, and perhaps could not, have presented expert testimony explaining why it would be necessary to exclude the *entire* value of salable professional goodwill in order to avoid "double counting." Suppose, as Tim surmises based on the testimony of his expert, that 95% of the total salable goodwill is attributable to professional goodwill. If the circuit court had accepted this percentage allocation and then applied Tim's proposed rule to the $1,058,000 valuation, Tracy's share in the orthodontic practice would have dropped from $529,000 to $143,775. We have no idea whether this $385,225 reduction to Tracy constitutes a reasonable offset for the benefit she will receive by including all of Tim's earnings when calculating maintenance. Plainly the circuit court cannot be faulted for not taking this approach because there was no evidentiary basis for reaching that conclusion. Thus, even if some adjustment in the property division may be appropriate, the record here does not support the total exclusion of the value of salable professional goodwill.[12]

[12] We calculate the $385,225 reduction by taking the circuit court's finding that tangible assets were worth $247,000 and treating the remainder of the valuation ($811,000) as goodwill,

¶ 43.   The third reason we decline to adopt Tim's proposal again highlights the lack of economic information before us. Tim agrees that corporate goodwill is divisible. His unspoken assumption appears to be that dividing the value of *corporate* goodwill is permissible because it does not lead to "double counting." We question this assumption. As with salable professional goodwill, it appears to us that a business owner's ongoing earning capacity is enhanced by salable corporate goodwill. Businesses with substantial corporate goodwill, like those with substantial professional goodwill, produce greater profits than similar businesses with less goodwill. Since it is settled law in Wisconsin that, at a minimum, salable corporate goodwill is divisible, it may be that imposing a blanket prohibition on treating salable professional goodwill as divisible would conflict with the treatment of salable corporate goodwill.

¶ 44.   We pause here to comment on Tim's contention that if the value of professional goodwill can only be realized by means of a non-compete agreement, then such value is not divisible. Why, we ask, does this mechanism for transferring professional goodwill suggest that the professional goodwill is not divisible? Tim does not explain. If Tim did sell his practice shortly

with 95% of that remainder attributable to professional goodwill. This calculation attributes $770,450 to professional goodwill and, thus, would lead to the exclusion of this amount from the divisible assets. Although the circuit court reasonably rejected Tim's expert's opinion that such a high percentage was fully attributable to professional goodwill, the literature on this topic suggests to us that, even if this 95% estimate is high, the primary salable asset of many professional practices is, nonetheless, professional goodwill that is transferred by means of a non-compete agreement.

175

after this divorce, with a non-compete agreement, the result might be that Tim's earnings would decline. If that happens, the practice would be sold as anticipated in the property division, and maintenance can be revisited to take into account the changed circumstances.[13] This is not the puzzling scenario from a double counting standpoint. Rather, double counting, in some unknown amount, would occur only if Tim does *not* sell. In that event, Tracy would have received half the value of salable professional goodwill and would continue to receive maintenance for years based, in part, on that same professional goodwill.

¶ 45.  Tim's reliance on non-compete case law is similarly unavailing. Tim cites *Williams v. Williams*, 667 So. 2d 915 (Fla. Dist. Ct. App. 1996), as an example

---

[13] For a discussion of the relevant considerations in adjusting maintenance, we refer the reader to *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶ 32 n.5, 269 Wis. 2d 598, 676 N.W.2d 452 ("[B]oth support and fairness considerations must be weighed when determining whether to modify a maintenance award."). We also note here that Tim mistakenly assumes that if he sells his practice, and then moves the court for a reduction in maintenance because of his reduced earnings, the court will reject his request and "his maintenance obligations would remain unchanged." Tim posits that if he sells his practice and then seeks a reduction in maintenance, Tracy will take one of two positions:  (1) she will oppose the requested maintenance adjustment as inequitable because Tim voluntarily reduced his earning capacity "via [a non-compete sale] and received valuable consideration for doing so," or (2) she will argue that, if Tim's maintenance obligations are adjusted downward, she should receive one-half the consideration Tim received for the non-compete agreement. It is true that Tracy might make these arguments, but it is not true that she would or should be successful. In both scenarios, Tim wrongly assumes that a court would fail to recognize that Tracy has already received her share of Tim's professional goodwill.

176

of a case that treats the need for a non-compete agreement as a reason to exclude related professional goodwill from divisible property. But *Williams* is an unsatisfying read to say the least. The Florida court starts with the premise that "goodwill of [a] professional practice can be a marital asset subject to division . . . [but] it must exist separate and apart from the reputation or continued presence of the marital litigant." *Id.* at 916. The court goes on to assert, without explanation, that if "no one would buy the practice without a noncompete clause . . . [t]his is telling evidence of a lack of [divisible] goodwill." *Id.* The court concludes: "[T]he evidence [here] failed to show the existence of goodwill in [the business], separate and apart from the reputation and continued presence of [the marital litigant]." *Id.* at 916–17. Thus, the *Williams* opinion does no more than assert that, when professional goodwill is salable by means of a non-compete agreement, that professional goodwill is non-divisible. There is nothing in the *Williams* opinion that explains why this holding makes sense.

¶ 46.    Finally, we note that professional goodwill is sometimes sold by means other than a non-compete agreement. For example, part of the agreement Tim had with the dentist that he purchased from required that dentist "to introduce [Tim] to . . . existing patients." In this manner, the dentist with established professional goodwill could vouch for Tim and, effectively, transfer some of that professional goodwill to Tim. What reason would Tim give for excluding the value of professional goodwill transferred in this manner? In any event, we fail to see why the mechanism for transferring professional goodwill matters or what Tim's non-compete discussion adds to his direct "double counting" argument.

177

## 2. The Alternative Of Adjusting Maintenance

■

¶ 47.   An alternative approach suggested by Tim's double counting argument is to deal with the issue when calculating maintenance. Circuit courts could include salable professional goodwill as divisible property, but then make a compensating downward adjustment in maintenance. This approach would avoid the problem we have described in the examples involving the retiring dentist and the dentist who dies unexpectedly. And, obviously, it deals with the situation in which no maintenance is ordered. Although this approach looks to have theoretical appeal, we do not require its use here for two reasons.

¶ 48.   First, Tim does not make this argument, and we do not have the benefit of adversarial briefing on the issue.

¶ 49.   Second, we are unable to give the circuit court guidance on how to apply this approach. That is, if we remanded this matter to the circuit court to revisit maintenance in order to deal with the double counting issue, we could not give the court helpful direction on how it might go about determining an appropriate reduction in maintenance. As we explain above, we do not know how, or even if, a particular reduction in maintenance can be calculated that would *appropriately* offset the amount Tracy received in the property division attributable to salable professional goodwill. For example, we do not know what expert testimony Tim might have been able to provide if he had, as an alternative argument, accepted the proposition that salable professional goodwill is divisible, and sought a compensating downward adjustment in maintenance. And, the case law and treatises we reviewed do not shed

light on this topic. Thus, we do not know whether double counting is a significant problem, and, if it is, whether there is a viable means of adjusting maintenance to compensate for treating salable professional goodwill as divisible property. We will not reverse the circuit court and remand for further proceedings based on mere speculation that the maintenance award is unfair, and corresponding speculation that there is a workable means of avoiding the unfairness.

### 3. *Tracy's Position*

¶ 50.  What remains is the approach advocated by Tracy and effectively adopted by the circuit court:  include all salable goodwill, both corporate and professional, as a divisible asset and then, essentially, ignore the fact that Tim's earnings are intertwined with part of the divisible assets. Because there is no existing rule precluding this approach, and because we decline to adopt a rule that requires the exclusion of salable professional goodwill from divisible property, we affirm the circuit court. Tim's entire argument hinges on there being a blanket rule prohibiting the inclusion of salable professional goodwill from divisible property. He does not argue in the alternative that, if it is permissible to include salable professional goodwill in divisible assets, the circuit court nonetheless erroneously exercised its discretion in this case. Accordingly, we affirm the circuit court.

### *Conclusion*

¶ 51.  For the reasons explained, we affirm the circuit court.

*By the Court.*—Judgment affirmed.

179

¶ 52. DYKMAN, P.J. (*dissenting*). I read the majority opinion as acknowledging that the trial court double-counted the value of Tim's orthodontic practice by valuing goodwill (of whatever type) which at least in some part is a measure of Tim's earning capacity, and then used Tim's future earning capacity to set maintenance. But because the record is insufficient to identify a non-divisible portion of Tim's practice, the majority affirms.

¶ 53. Part of the problem is that there is no double-counting rule. *Cook v. Cook*, 208 Wis. 2d 166, 180, 560 N.W.2d 246 (1997), explains that the "rule" is not inflexible, but instead "serves to warn parties, counsel and the courts to avoid unfairness by carefully considering the division of income-producing and non-income-producing assets and the probable effects of that division on the need for maintenance and the availability of income to both parents for child support." There are a multitude of double-counting rules, but each is wholly dependent on its facts. Thus, if the facts in an asserted double-counting divorce case are identical to the facts in one of the several published double-counting cases, a predictable result can be obtained. Otherwise, the teaching from *Cook* is that the result where double-counting is present must be fair.

¶ 54. So, I disagree that the problem in this case is a lack of expert testimony. I think it is clear that the trial court divided the value of Tim's practice and also used the income from that practice to set maintenance. I think the difficulty is that, though the trial court carefully examined the testimony, made credibility determinations, and considered a variety of factors in setting maintenance, it did not specifically consider the *Cook* double-counting "fairness" requirement to address the double-counting problem. To do this, the trial court

did not have to make a finding as to what portion of the value of Tim's practice was divisible and which non-divisible. I believe, and I think the majority does too, that there is some of each in the value accepted by the trial court. But for me, an exact finding as to which is which is not necessary. It may be that if the majority were to agree with me, the resulting property division and maintenance award would not change on remand. Or it might. But the parties and any reviewing court could see the trial court's reasoning in this respect, and the pole star of appellate review of discretionary decisions is whether the trial court used a rational process to reach a reasonable conclusion. *See City of Stoughton v. Thomasson Lumber Co.*, 2004 WI App 6, ¶ 38, 269 Wis. 2d 339, 675 N.W.2d 487 (WI App 2003). And, since this is an opinion designated for publication, practitioners and trial courts would, if the majority remanded, include a *Cook* analysis in potential double-counting cases in the future. But because I would remand and the majority affirms, I can only respectfully dissent.